**GARDNER, administratrix, &c. vs. GARDNER and others.**

An executor or administrator who is cited to account before the surrogate, must bring in a full account of his receipts and disbursements, on oath, in-including all sums properly chargeable to him on account of the estate, whether mentioned in the inventory or not.

Where the rights of infants or of absentees are to be affected by the account-ing, it is the duty of the surrogate to require the executor or administrator to verify his account by oath, in the usual form, although other parties, who appear, consent to waive such verification.

Where the executor or administrator verifies his account in the usual man-ner, he must also support the credits claimed by him in the account by proper vouchers or other evidence of the payment. And if he wishes to be allowed for payments or disbursements of $20 or under, for which he has no vouchers or other evidence, the times when, the persons to whom, and the purposes for which such payments were made, must be particularly stated; and in addition to the usual verification of the account, he must swear positively that the sums thus charged have actually been paid.

Proper course of proceeding, upon the accounting of an executor or adminis trator before the surrogate.

The surrogate has jurisdiction, upon the taking of the account before him, to examine and decide upon the validity of a claim against the executor or administrator in favor of the estate; especially where the party account-ing is entitled to a distributive share of the estate.

The executor or administrator must account for all sums due from him to the estate either at law or in equity.

Whether the sureties of an administrator are liable for a debt due from him to the decedent, and which he neglects to account for and pay over to the creditors or distributees; *quære?*

The separate estate of a feme covert is chargeable in equity with debts which she contracts on the credit of, or for the benefit of such estate; as to which estate she is regarded as a feme sole. And where she has borrowed money from her husband on the credit of and for the benefit of such estate, if she is afterwards appointed his administratrix it is her duty to proceed against the separate estate to obtain a re-payment of the money, for the benefit of his estate, or to pay the same out of her own funds. But she is not personally liable for the payment of a debt contracted by her during her coverture on account of such separate estate.

A wife who is appointed administratrix of her husband, is not liable to ac-count for his property which was expended by her during his lifetime, ex-cept in a case where it was expended for the benefit of her separate estate, which remained after his death.

THIS case came before the chancellor upon an appeal from the sentence or decree of the surrogate of New-York, upon the settlement of the accounts of the appellant C.

Gardner administratrix with the will annexed of James Gardner her former husband. The accounts were referred to the auditors, who decided, among other things, that the respondents the nephews of the testator were not chargeable with the interest on a bond and mortgage given to him by their father, except from the death of the latter; the interest previous to that time being bequeathed as a specific legacy for the support of the respondents and their father. The creditors also charged the administratrix with the sum of $2000 received by her from her husband's property in his lifetime and invested in improvements on and the purchase of lots for her separate estate. And they refused to allow her for two sums which she had been compelled to pay after the death of her husband for balances due at the time of his death on account of a joint guardianship of two infants which had previously been committed to her husband and herself. The surrogate confirmed the report in all these respects and made a decree for the distribution of the estate accordingly, in conformity to the directions of the will; that is to say, one half of the residuary estate to the appellant and the other half to the respondents. And he also decreed that the costs of both parties be paid out of the estate. From this decree the administratrix entered a general appeal with the surrogate; but in her petition of appeal filed in this court, she only claimed that the decree was erroneous in the three items above specified; and as to the costs of the legatees.

*D. B. Ogden & W. N. Dyckman*, for the appellants.

*Robert Bogardus*, for the respondents.

THE CHANCELLOR. The petition upon which the proceedings were instituted before the surrogate was sufficient as an allegation to authorize the surrogate to direct an accounting. But there was an irregularity on the part of the administratrix in not bringing in her account under oath in the usual form. If she had done this instead of making the verbal statement to the surrogate, that she received $2000

of her husband which was expended on her property at Williamsburgh, the adverse party would have known whether she meant to declare on oath that she did not believe that sum ought to be credited to the estate, and could have taken their objections accordingly. This court has frequently decided, that where an executor or administrator is cited to account before a surrogate either by creditors, legatees or distributees, he is bound to bring in a full account of his receipts and disbursements, on oath, including all sums which are properly chargeable to him on account of the estate whether mentioned in the inventory or otherwise ; the substance of which oath is, that the account, according to the best of his knowledge, information and belief, contains a full and true account of all his receipts and disbursements on account of the estate of the decedent, and of all sums and property belonging to the estate which have come to the hands of such executor or administrator, or which have been received by any other person by his order or authority for his use ; and that he doth not know of any error or omission in the account, to the prejudice of any of the parties interested in the estate of the decedent. And where the rights of infants or of absentees are to be affected by the accounting, it is the duty of the surrogate to see that the account is duly verified by the executor or administrator, although other parties, who appear, consent to waive such verification of the account. The accounting party must also support the credits he claims, by proper vouchers or other evidence of the payments. And where he wishes to be allowed for payments or disbursements of $20 or under for which he has no vouchers or other evidence, the times when, the persons to whom, and the purposes for which such payments or disbursements were made, must be particularly stated ; and he must also add to the usual affidavit verifying the correctness of the account a positive allegation that the sums charged under twenty dollars for which no such vouchers or other evidences of payment are produced have actually been paid or disbursed by him, as charged. (*Kellet* v. *Rathbun*, 4 *Paige's Rep.* 102.)

1838.

Gardner
v.
Gardner.

Where the account is made out and verified in the usual form, and the proper vouchers are produced in support of the same, the adverse party should be called upon by the surrogate to state his objections, if any, to the account, so as to save all unnecessary or useless expense; and at the peril of costs, to be charged upon such party personally, if he makes objections which upon a subsequent investigation of the accounts it shall be found he had no reasonable or probable grounds for making. A party however is not absolutely precluded by the objections first made to the account; as it frequently is discovered in the course of the investigation that charges have been improperly inserted in the account, or credits to the estate have been omitted by the executor or administrator, which the adverse party had no means of knowing at the time the account was first presented. In this respect, it is like a proceeding to take an account before a master, where additional charges or discharges may be afterwards received, upon sufficient reasons shown, and giving the adverse party an opportunity to be heard thereon and to produce evidence to rebut or to explain them. I think the auditors were right, under the circumstances of this case, in permitting the respondents to go into evidence in support of the $2000 claim.

Neither do I see any objection in this case to the jurisdiction of the surrogate to examine and decide upon the validity of a claim against the administratrix in favor of the estate, for the purpose of determining what portion of the estate she shall be permitted to retain as one of the residuary legatees. If a debt claimed to be due cannot thus be ascertained, it will follow of course that a bill in chancery must be filed in every such case; as the administrator or executor cannot sue himself. And yet there are many cases in which the debt claimed to be due from the executor or administrator is beneath the jurisdiction of the court of chancery. The object of the legislature, in the last revision of the laws, was to give to the surrogate a complete jurisdiction to do justice between the parties, upon an executor or administrator's being cited to account. And where such executor or admininstrator accepts the office, he cannot ob-

ject to that mode of deciding the question whether he is not himself a debtor to the estate of which he has assumed the management. Whether the sureties of the administrator can be made liable for a balance found due from the administrator, to the decedent in his lifetime, is a question which cannot arise in this case. That an executor or administrator cannot be excused from his personal liability for the debt due to the estate, whether the claim against him is a legal or an equitable one, is perfectly clear. And I am satisfied that the surrogate's court has jurisdiction to determine the question of such liability, where the alleged debtor is cited to account before that court for the administration of the estate ; especially where he is entitled to a distributive share of the fund which may be found due upon such accounting.

The only question in this case therefore, as to this item of the account, is whether this $2000 was a demand due to the estate, which could have been collected or obtained in any manner, for the benefit of the residuary legatees or of the creditors of the decedent, if administration had been granted to some other person than the widow. And from the whole evidence taken together, I am satisfied it was such a demand, and that the appellant was properly charged with that sum and with the interest thereon from her husband's death. During the existence of the marriage it is impossible for the wife to make any contract or agreement with her husband, which will make her personally liable to him or to his estate either in law or equity. But she may have a separate estate of her own, which estate is chargeable in equity for any debt she may contract on the credit of or for the use of such estate. So far as that estate is concerned, she is considered as a feme sole ; and the estate is answerable for money borrowed by her or her trustee for the benefit of such estate, although the husband is the lender. It appears from the evidence in this case, that the appellant had such a separate estate at Williamsburgh, which estate was probably held during her husband's lifetime in the name of Williams as her trustee. And the money for which she gave the bond to her husband was applied by her either in building upon this separate estate or in the purchase of ad-

ditional lots.  The testimony is not explicit, however, as to the actual application of the money for the purposes of this separate estate.  But if it was not so applied, then I think it may be fairly presumed from the evidence that she had it in some other property or in money or securities at her husband's death.  In which latter case, she is personally liable to account for the same as a part of the decedent's property; as it could not belong to her unless it was a part of her separate estate.

If the money was received and applied by her to the use of her separate estate, then such separate estate was holden to pay the debt.  And although she was not personally liable to pay it if she has not herself received the benefit of the separate estate after the death of her husband, it was her duty as a faithful administratrix to see that such separate estate reimbursed the amount to the estate of her husband. (a) Had another person taken out administration, it would have been his duty to call upon her or on her trustee to pay the debt out of her separate estate, at least to the full extent of the value of such separate estate; and there is no pretence in this case that such estate was not worth more than this $2000, which was laid out in improvements thereon or in purchasing additional lots.  She being the administratrix was bound to enforce the payment in the same manner, if the estate was in the hands of a trustee who would not apply such property to pay the debt without a suit in equity for that purpose.  And if she has taken the trust property into her own hands, or has neglected to enforce the payment of this debt by a proceeding against the trustee, she is now personally liable therefor, as administratrix, although she was not personally liable at the time of the decedent's death, in the same manner as any other person would have been liable, as administrator, for neglecting to collect a debt due to the estate which could have been collected with reasonable diligence.

I agree with the surrogate that it was perfectly competent for the husband to discharge the separate estate of the

_____

(a) See *Jumel* v. *Jumel & Lagardare, in Chancery*, July 2, 1839, *S. P.*

wife from an indebtedness to himself. From the testimony, however, I do not believe he was in a situation to transact business understandingly, either at the time of the alleged destruction of the bond or for a long time previous thereto. He had become so completely broken down by intemperance that he was not only incompetent to the management of his property, by reason of his habitual drunkenness, but was also so far deranged in intellect as to render it necessary to confine him repeatedly in a mad-house. And when it is ascertained that a man's natural intellect is so far destroyed, it must require stronger evidence than exists in this case, to satisfy one who has been in the habit of investigating cases of this kind that the mind was not still diseased, although it was not necessary to resort to actual confinement of the decedent at the time of the destruction of the bond. A rational man, if he really intended to discharge his wife's separate estate from so large an amount, would have given to her or to her trustee some written evidence of the fact, instead of leaving it to depend upon the recollections of one who, from her situation, would hardly fail of being suspected of giving a false coloring to the case. As there is no evidence to impeach the testimony of Jane Milnor, I must presume her mother or some one else had persuaded the decedent to destroy the bond, and that the witness saw a paper destroyed which probably was the bond that had been given for the money loaned to the appellant for the benefit of her separate estate. But if implicit reliance is to be placed upon the honesty of this witness, suspicious as the circumstances are in relation to the facts intended to be established by her testimony alone, still the court was not bound to rely upon the correctness of her judgment as to the real state of the decedent's intellectual capacity, at the time the bond was supposed to be destroyed. Her testimony on that point is a mere matter of opinion. And I think there was other evidence which fully justified the conclusion at which the creditors and the surrogate appear to have arrived, that the decedent, at the time spoken of, was not of sufficient capacity and judgment to transact business of this kind understandingly, so as to make a volun-

tary gift of this large sum available in favor of one who had so much influence over him as to obtain the real control of his business and property. Certainly, if he had made a codicil to his will at that time, giving to his wife a further legacy of two thousand dollars, attested and proved by this witness only both as to his capacity and as to the fact of his signing the instrument, such a codicil could not have been sustained under the circumstances as to his capacity, &c. immediately before and after that time, as disclosed by the other proof. And if such a written bequest of the $2000 would not have been available to the donee, from this broken down inebriate whose faculties both of body and mind were so nearly destroyed by his continued intemperance, a mere parol gift of the same amount, under such suspicious circumstances, ought not to be considered as valid, so as to deprive the appellants of their claim to the same as a part of his estate. The decision of the surrogate as to this item must therefore be affirmed.

The question as to the interest which had accrued on the bond and mortgage of Charles Gardner, previous to his death, having been deliberately settled by this court upon the construction of the same will, in another suit, where the decision was in conformity to the decision made by the auditors and the surrogate in this case, the decree appealed from must be affirmed as to that point also.

I think, however, the court below should have allowed to the appellant the two sums which she was compelled to pay for the balance found due from her and her husband, at the time of their removal, as the joint guardians of the estate of the two infants. There is no doubt of the fact that she actually received the money which was afterwards found not to have been expended for the benefit of the infants. But there is no evidence that it was kept by her as a separate fund which could be traced and identified as being still in her hands, as the surviving guardian, after her husband's death. And if it was spent before that time, either for the support of herself and husband, or otherwise, unless for the special benefit of her separate estate, the estate of the husband was the primary source to which the infants were to look for pay-

ment; as in legal contemplation the husband's estate alone has been benefitted by the misapplication of the money of the wards by himself and his wife. The decree of the surrogate must be opened and modified in this respect.

The objection to the allowance of costs to the respondents out of the estate is not well taken, and the decree in that respect should be affirmed. Indeed it is more doubtful whether the surrogate should not have charged the appellant's own costs upon herself personally, instead of charging them upon the estate in which the other parties were interested; as nearly the whole expense of taking this account has arisen from her neglect to render a correct account, and to pay over the shares of the legatees who had arrived of age, according to the directions of the will. But under all the circumstances, I think the surrogate made the proper disposition of the costs before him. Neither party was entitled to counsel fees, upon the proceedings to account, beyond the usual taxable allowances under the fee bill; although the auditors seem to have supposed otherwise in one of the blank items of the account as made out by them. The result, however, as between these parties would be the same, if the counsel fee allowed to each party was the same in amount; as the residuary fund was to be divided equally between the two contending parties.

The decree of the surrogate must be modified accordingly, without costs to either party on this appeal. And the proceedings must be remitted to the surrogate to carry into effect the decree as thus modified. Interest to be allowed upon the balance from the date of the surrogate's original decree.