By the Court. Vanderpoel, J.
It would seem from the books of reports of this state, that this is a rare action among us. They abound with actions for personal slander ; but few, if any, actions for slander of title can be found in them. Not so, however, in England; the action there seems a frequent one, and the principles which govern it seem there pretty well established.
The action for slander of title differs in many particulars from the ordinary action of slander. The truth of the words may be given in evidence under the general issue. (Cooke’s Law of Defamation, 27, and cases there cited.) In one particular, the charge of the judge was more favorable to the defendant than the law will warrant. He charged, at the request of the defendant’s counsel, that if the words were not true in point of fact, yet, if the information thereby communicated by the defendant had been given to him, and he had probable cause to believe the same to be true, then a verdict should be rendered for the defendant. This was putting the action upon the same ground on which the action for malicious prosecution rests ; a ground erroneous, but an error committed at the defendant’s request, and one of which he cannot complain. In Pater v. Baker, (3 Man. Gran. & Scott, 831,) Maulé, Justice, lays down what he looks upon to be the true rule. He says, the want of probable cause does not necessarily lead to an inference of malice; neither does the existence of probable cause afford any answer to the action. The action, he remarks, is for slander *283 title, which he pronounces a sort of metaphorical expression. Three things are necessary to maintain the action. The words spoken must be false; they must work an injury to the plaintiff, in respect to his title; and they must be malicious; not malicious in the worst sense, but with intent to injure the plaintiff. (Pitt v. Donovan, 5 Maule & Sel. 639 ; Smith v. Spooner, 5 Taunt. 246.) The case of Pitt v. Donovan, was an action for slander of title, conveyed in a letter to a person about to purchase the estate of the plaintiff, imputing insanity to Y., from whom the plaintiff purchased it, and that the title would, therefore, be disputed, for which cause the person refused to complete the purchase. It was held, that the defendant who had married the sister of Y., who was heir at law to her brother, in the event of his dying without issue, was not to be considered as a mere stranger ; and the question for the jury was, not whether they were satisfied, as men of good sense and good understanding, that Y. was insane, or that the defendant entertained a persuasion that he was insane, upon such grounds as would have persuaded a man of good sense and knowledge of business; but whether he acted bona fide, in the communication which he made, believing it to be true. From this and other cases, it would seem that a person who utters words in the bona fide assertion and maintenance of his own title, is regarded as standing in a more favorable position, in this action, than he who attacks the title of another, without such cause; and Cooke, in his Law of Defamation, p. 23, says, “ As soon as it appears, that the defendant claimed title to the property, to which the slander applies, he is entitled to a non-suitciting Gresham v. Grinsley, (Yelv. 80.) We are not called upon to decidle, in this case, whether the mere claim of title on the part oft a defendant in this kind of action, no matter how false or pre/tended such claim, exempts him from the action; as the defendant here did not claim title himself. We can, however, readily perceive why a person, honestly asserting and maintaining Mis own title, should be protected, though such title should tunfi out to be invalid.
f The judge charged the jury that the question for them to determine was, whether the defendant made the statements to *284 Wheeler bona fide, and under an honest impression of their being true; or whether he made them maliciously, and for the purpose of slandering the title of the plaintiff; that the question whether the words were maliciously or bona fide spoken, depended very much upon their truth or falsity, the circumstances under which they were spoken; whether honestly to caution purchasers, or to alarm them with bug-bears of his own creation.
The evidence of Wheeler abundantly proved the speaking of words derogatory to the plaintiff’s title, and the fact that he forbore to complete his contemplated purchase of the plaintiff, in consequence of the speaking of the words. There is, therefore, no doubt that sufficient words, and a consequence from them sufficiently detrimental to the plaintiff, to sustain the action, are shown, provided malice, the other indispensable ingredient, be established.
This was a question of fact, and was fairly submitted by the judge to the jury. The whole charge proceeds on the ground that if the defendant honestly believed what he communicated to Wheeler, and cautioned him in a fair spirit, he was not liable; but if he made the communication with a different spirit, to prevent the sale to Wheeler, so as to enable the defendant to get the plaintiff’s property himself for less than its value, or from any other impure or corrupt motive, then he must be deemed to have' spoken the words maliciously. We see nothing exceptionable in this view of the charge. It contemplates or holds out sufficient protection to them who speak honestly, with the sole and laudable view of cautioning a friend or acquaintance against purchasing property, the title to which, the informant really believes to be imperfect. The policy ©f common law courts has always been to secure most perfect Ximpunity for words spoken in such a spirit; and we would b\e unwilling in the least degree, to circumscribe this privilege, 'jl'his may, therefore, properly be denominated, what the action for malicious prosecution has justly been called, a hard or difficult action. The plaintiff assumes the burthen of proving, root only special loss, but actual malice, not that malice which tnse law implies in ordinary, actions for defamation.of the person ; *285 but actual, express malice. Still, hard and difficult to be maintained as the action is, where cases occur that give legitimate occasion for it, justice, and the security of property, require that it should be sustained. The infrequency with which it is resorted to, and the difficulty of sustaining it, afford an ample guaranty that it is not apt to lead to abuse.
The defendant contends, that the evidence of James Hall, Alfred W. Waddell, and James Rich, of declarations made to them, was not admissible. The proof of other conversations of the defendant, respecting the same title and subject, was admissible to prove the malice of the defendant; and for this purpose only were they offered and received. (Kennedy v. Gifford, 19 Wend. 296 ; 3 Pick. 370; 13 ibid. 503; Rogers v. Clifton, 3 Bos. & Pull. 587.) The quo animo the words charged were spoken, may be shown by evidence of conversation of the defendant, subsequent to the commencement of the suit.
It is further contended, that the use made by the witness, Wheeler, of his memorandum, was improper and rendered his testimony inadmissible. The court told the witness he could only use the memorandum to refresh his recollection. The witness, to be sure, on his cross-examination, said that in testifying from the memorandum, he read the memorandum, and then gave the words of the paper from recollection as derived from the paper, but the witness did not state that he had no recollection of the conversation, independently of what he derived from his memorandum. Indeed the witness had given evidence enough to show the speaking of the words, before the memorandum was introduced. Before we hear of any memorandum, the witness testified that the defendant told him he had a mortgage on the property for $3000, and that there was a state loan on it for about $3000 ; that there were liens upon it, or bills filed against it by Mr. Reed ; and that, if it could be made to appear that Mr. Wooley had an interest in the lots it would have a bearing upon them, and that he thought it risky to purchase, under the circumstances, of Mr. Kendell. In Robertson v. Lynch, (18 John. 451,) the plaintiff’s clerk testified that he had made the entry of the wool which was the subject of the suit, in the plaintiff’s day book ; but that he could not *286 state the precise quantity, nor the different qualities, without refreshing his memory, by referring to a copy of the entries he had made ; and he was permitted to refer to the entries, and the court sanctioned it. In Foster v. Heath, (11 Wend. 478,) the chancellor said he could see no valid reason why witnesses should not be permitted to inspect written memoranda in court, provided they can, after such inspection, distinctly recollect the facts, independently of the written memorandum or document. The latter branch of this remark was not, perhaps, called for by the case. Greenleaf, in his Evidence, (vol. 1, p. 483,) says, “ though a witness can only testify to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and assist his memory by the use of a written instrument, memorandum, or entry in a book ; but where the witness neither recollects the fact, nor remembers to have recognized the written statement as true, and the writing was not made by him, his testimony, so far as it is founded upon the written paper, is but hearsay ; and a witness can no more be permitted to give evidence of his inference, from what a third person has written, than from what a third person has said.” This we regard as the true rule. If the witness did not write the memorandum, and never recognized it as true, it is but hearsay ; but where a witness made a memorandum of a conversation or transaction, so recently after its occurrence that he knows he then recollected it perfectly and committed it to paper faithfully, we cannot perceive any good principle to prevent him from reading his memorandum. In Rex v. St. Martin’s, Leicester, (2 Adol. & Ellis, 210,) an agent made a parol lease, and entered a memorandum of the terms in a book, which was produced; but the agent stated that he had no memory of the transaction, except from the book, without which he should not, of his own knowledge, be able to speak to the fact, but on reading the entry, he had no doubt that the fact really happened ; it was held sufficient. So, where a witness called to prove the execution of a deed, which he has witnessed, states that he has no knowledge of the fact, except from seeing his signature to the attestation, and says he is, therefore, sure that he saw the party execute the deed, that is sufficient proof of its execution. (1 *287 Greenleaf) 485, and cases there cited.) In Vaughan v. Hubbard, (8 Barn. & Cress. 16,) it was held, that the witness might be permitted to refer to an entry of a transaction, made by him, although he stated that he had no memory of those things, except from the book, but that on reading the entry he had no doubt of its truth. (See also Russell v. Coffin, 8 Pick. 143, 150; Jackson v. Christman, 4 Wend. 277, 282.) We repeat, nothing transpired to violate the rule as laid down by the chancellor in Foster v. Heath, as the main part of the witness’s testimony was given before the memorandum was introduced. Whatever our opinion may be, as to what is the most sound and reasonable rule, this case does not create a necessity, if we had the power or disposition to do so, to depart from the rule as held by the chancellor.
The next inquiry is, whether the judge properly charged the jury that they might give exemplary damages, and rightfully refused to charge that they could only give compensatory as distinguished from exemplary damages. In actions of tort, the jury are the proper judges of the weight and effect of the evidence, and the court will not interfere with the damages found by the jury, unless they appear to be grossly disproportioned to the injury sustained. (Williams v. Cruise, 1 Manning, Granger & Scott, 841.) That was an action for trespass, quare clausum fregit, against a landlord, by injuring the crop of his tenant, by felling and removing timber, without asking leave to enter. The jury assessed the damages at £300, when the value of the tenant’s crop was only £200. The judge charged the jury that the plaintiff was not to be permitted to make a market of his grievance, but that they were not, necessarily, to limit the damages by the amount of pecuniary injury sustained. Beglar, Sergeant, arguendo, cited and commented upon a number of cases going to establish the principle that the jury are, by no means, always, in tort, to measure the damages by the amount of injury sustained. (Perkins v. Proctor, 2 Wel. 386.) In Merest v. Harvey, (5 Taunt. 442,) the jury gave £500 for breaking the plaintiff’s close, treading down his grass and hunting for game, and the court held that the damages were not excessive, though it was probably ten times more than the injury *288 actually sustained. Gibbs, Ch. J. says, “ suppose a gentleman has a paved walk in his paddock, before his window, and that a man intrudes and walks up and down before the window of his house, and looks in while the owner is at dinner—is the trespasser permitted to say, ‘ here is a half penny for you, which is the full extent of all the mischief I have done.” ’ And Heath, Justice, mentioned a case, where a jury gave £500 for merely knocking a man’s hat oif, and the court refused a new trial. In Sharp v. Brice, (2 W. B. 942,) De Gray, Ch. J., said that in torts, a greater latitude is allowed to jurors, and the damages must be excessive and outrageous, to require or warrant a new trial. (Edgell v. Francis, 1 Man. & Gran. 222.) On the whole, although we would have been - better satisfied, had the damages been less, we do not feel disposed to interfere with the verdict, on the ground of their excessiveness.
New trial denied.