OSCAR A. WILLARD *vs.* ELIZABETH EASTHAM & others.

A debt contracted by a married woman, for the accommodation of another person, without consideration received by her, will not be enforced in equity against her separate estate, unless made a charge upon it by an express instrument.

HOAR, J.   This case presents a question entirely novel in the jurisprudence of this commonwealth, and which could not have come before us until the grant of the full equity powers which were conferred upon this court by a recent statute.   *St.* 1857, *c.* 214.   It is a bill in equity, by which the plaintiff seeks to charge the separate estate of a married woman with the payment of a promissory note made by her.   The bill avers, in substance, that the brother of Mrs. Eastham purchased of the plaintiff his interest in a copartnership; that, being himself of no sufficient credit or pecuniary responsibility, he procured the note of his sister, who was then, and still is, a married woman, payable to himself, and indorsed it to the plaintiff in payment of the purchase money; that she made the note for this purpose, and promised to pay it at maturity; that it has not been paid; and that Mrs. Eastham was at the date of the note

and still is possessed of valuable real estate, which she holds as her separate property, and which is leased to two persons who are joined in the bill as defendants, who pay her rent for the same; and prays that these rents may be sequestered and appropriated to the payment of the note. The husband of Mrs Eastham is joined as a defendant; and to this bill all the defendants demur.

The question is, to what extent and under what limitations the separate estate of a married woman is to be applied in equity to the discharge of her contracts and engagements.

It was held from a very early period in England, that a married woman, although incompetent at law to make a valid contract, would be regarded in equity as a feme sole, in respect to her separate estate. *Grigby* v. *Cox*, 1 Ves. Sen. 517. *Peacock* v. *Monk*, 2 Ves. Sen. 190. And the rule seems to have been universally recognized, where a married woman made an express contract respecting such an estate, of which she was entitled to the beneficial use, that she and the party with whom she contracted might have the aid of a court of equity to make the contract effectual. This doctrine is the legitimate consequence of the principle that a married woman may execute a power, and so may make a valid appointment.

But in *Hulme* v. *Tenant*, 1 Bro. C. C. 16, the doctrine was extended much farther; and Lord Thurlow there says, that " determined cases seem to go thus far; that the general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply personal estate, and rents and profits when they arise, to the satisfaction of such general engagement." At a subsequent stage of the case he expresses the principle thus: " I have no doubt about this principle, that if a court of equity says a feme covert may have a separate estate, the court will bind her to the whole extent as to making that estate liable to her own engagements; as, for instance, for payment of debts, &c."

The decision in *Hulme* v. *Tenant*, although repeatedly doubted by Lord Eldon, was followed and acted upon by him and by

all the chancellors through a long series of cases. In some of these there was an attempt to restrict the application of the doctrine to cases of written contracts, and to treat these contracts as in the nature of appointments. But this distinction was subsequently abandoned as unsound; and a full discussion of the whole subject, presenting with great clearness the result of the modern English authorities, is found in the elaborate judgment of Lord Brougham, in *Murray* v. *Barlee*, 3 Myl. & K. 209, and in that of Lord Cottenham in *Owens* v. *Dickenson*, Cr. & Phil. 58.

"In all these cases," says Lord Brougham, "I take the foundation of the doctrine to be this: The wife has a separate estate, subject to her own control, and exempt from all other interference or authority. If she cannot affect it, no one can; and the very object of the settlement which vests it in her exclusively is to enable her to deal with it as if she were discovert. The power to affect it being unquestionable, the only doubt that can arise is, whether or not she has validly incumbered it. At first, the court seems to have supposed that nothing could touch it but some real charge, as a mortgage, or an instrument amounting to an execution of a power, where that view was supported by the nature of the settlement. But afterwards her intention was more regarded, and the court only required to be satisfied that she intended to deal with her separate property. When she appeared to have done so, the court held her to have charged it, and made the trustees answer the demand thus created against it. A good deal of the nicety that attends the doctrine of powers thus came to be imported into this consideration of the subject. If the wife did any act directly charging the separate estate, no doubt could exist; just as an instrument expressing to be in an execution of a power was always of course considered as made in execution of it. But so, if by any reference to the estate it could be gathered that such was her intent, the same conclusion followed. Thus, if she only executed a bond, or made a note, or accepted a bill, because those acts would have been nugatory if done by a feme covert, without any reference to her separate estate, it was held, in the cases

I have above cited, that she must be intended to have designed a charge on that estate, since in no other way could the instrument thus made by her have any validity or operation; in the same manner as an instrument, which can mean nothing if it means not to execute a power, has been held to be made in execution of that power, though no direct reference is made to the power. Such is the principle. But doubts have been in one or two instances expressed as to the effect of any dealing whereby a general engagement only is raised, that is, where she becomes indebted without executing any written instrument at all. I own I can perceive no reason for drawing any such distinction. If, in respect of her separate estate, the wife is in equity taken as a feme sole, and can charge it by instruments absolutely void at law, can there be any reason for holding that her liability, or, more properly, her power of affecting the separate estate, shall only be exercised by a written instrument? Are we entitled to invent a rule, to add a new chapter to the statute of frauds, and to require writing where that act requires none? Is there any equity, reaching written dealings with the property, which extends not also to dealing in other ways, as by sale and delivery of goods? Shall necessary supplies for her maintenance not touch the estate, and yet money furnished to squander away at play be a charge on it, if fortified by a scrap of writing? No such distinction can be taken upon any conceivable principle."

In *Owens* v. *Dickenson*, Lord Cottenham says of a written agreement: " It would have been operative upon the feme covert's separate estate, but not by way of the execution of a power, although that has been an expression sometimes used, and, as I apprehend, very inaccurately used, in cases where the court has enforced the contracts of married women against their separate estate. It cannot be an execution of the power, because it neither refers to the power nor to the subject matter of the power; nor indeed in many of the cases has there been any power existing at all. Besides, as it was argued in *Murray* v. *Barlee*, if a married woman enters into several agreements of this sort, and all the parties come to have satisfaction out

of her separate estate, they are paid *pari passu;* whereas if the instruments took effect as appointments under a power they would rank according to the priorities of their dates. It is quite clear therefore that there is nothing in such a transaction, which has any resemblance to the execution of a power. What it is, it is not easy to define. It has sometimes been treated as a disposing of the particular estate; but the contract is silent as to the separate estate, for a promissory note is merely a contract to pay, not saying out of what it is to be paid, or by what means it is to be paid; and it is not correct, according to legal principles, to say that a contract to pay is to be construed into a contract to pay out of a particular property, so as to constitute a lien on that property. Equity lays hold of the separate property, but not by virtue of anything expressed in the contract; and it is not very consistent with correct principles to add to the contract that which the party has not thought fit to introduce into it. The view taken of the matter by Lord Thurlow, in *Hulme* v. *Tenant,* is more correct. According to that view, the separate property of a married woman being a creature of equity, it follows that if she has a power to deal with it, she has the other power incident to property in general, namely, the power of contracting debts to be paid out of it; and inasmuch as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property, as the only means by which they can be satisfied."

The result of the English decisions would therefore seem to be that the separate estate of a married woman is answerable for all her debts and engagements, to the full extent to which it is subject to her own disposal.

The rule adopted by most of the courts in the United States has been materially different from that established in England; and the general current of American authorities supports the principle that a married woman has no power in relation to her separate estate but such as is expressly conferred in the creation of the estate; and that her separate estate is not

chargeable with her debts or obligations, unless where a provision for that purpose is contained in the instrument creating the separate estate. These authorities are very fully collected and commented on in the notes to the case of *Hulme* v. *Tenant*, in Hare & Wallace's edition of 1 White's Leading Cases in Equity, 324.

The decisions in the state of New York approximate somewhat more nearly to the English rule, but with some important qualifications. The courts of chancery have there held, that a feme covert, with respect to her separate estate, is so far to be regarded as a feme sole that she may dispose of it without the consent of her trustee, unless she is specially restrained by the instrument under which she acquires it; that if she enters into an agreement, and sufficiently indicates her intention to affect by it her separate estate, a court of equity will apply it to the satisfaction of such an engagement; but that her general personal engagement will not of itself affect her separate property ; and therefore, where creditors do not claim under any charge or appointment made in pursuance of the instrument of settle‹ ment, they must show that the debt was contracted either for the benefit of her separate estate, or for her own benefit upon the credit of the separate estate; and that such estate is not to be charged upon any implied undertaking. *Jaques* v. *Methodist Episcopal Church,* 17 Johns. 548. *Dyett* v. *North American Coal Co.* 20 Wend. 570. *Gardner* v. *Gardner,* 7 Paige, 112. *Curtis* v. *Engel,* 2 Sandf. 287. *Knowles* v. *McKamley,* 10 Paige, 343. *Cruger* v. *Cruger,* 5 Barb. 227. In *Vanderheyden* v. *Mallory,* 1 Comst. 453, it is said that any debt contracted by a married woman for herself or her husband will generally be regarded as *prima facie* evidence of an intention to charge her separate estate. But in the recent case of *Yale* v. *Dederer,* 18 N. Y. 265, the question arose of the liability of the wife's separate estate for the payment of a note which she had signed as a surety with her husband, the whole consideration having been received by him ; and the court of appeals held that it was not liable.

The relation of married women to their separate estates in

this commonwealth has been materially affected by statute, es-
pecially so far as concerns the case at bar, by the *Sts.* of 1845,
*c.* 208, and 1855, *c.* 304. By the provisions of these statutes,
a married woman may, by a marriage settlement, or by any
deed, gift, or devise, made to her by any person except her hus-
band after her marriage, take and hold any property, real or
personal, to her sole and separate use, free from the interven-
tion or control of her husband; and may hold in like manner
any property belonging to her at the time of her marriage; and
may contract, sue and be sued, and have and be subject to the
same remedies in law or equity in relation to property so held,
and to any contracts respecting it made by her, as if she were
unmarried. She may also engage in any trade or business on
her own account, and may sue and be sued as if sole in regard
to her trade, business, labor, services and earnings.

It is obvious from these provisions, that if the contract which
we are considering were to be regarded, in conformity with the
English decisions, as a contract relating to the separate estate
of the wife, merely because it would be otherwise wholly inef-
fectual and without validity, the plaintiff has made no case call-
ing for the aid of a court of equity, because he has a plain, ade-
quate and complete remedy at law. A married woman may
now be sued upon any contract relating to her separate estate,
and a judgment may be recovered against her upon it, and her
separate estate may be attached in the suit and afterwards
taken on execution, in like manner as if she were sole.

But aside from this objection to the plaintiff's suit, we can-
not assent to the correctness of the principle upon which it is
founded. We can see no sufficient reason for holding a con-
tract which is wholly void at law, from which neither the mar-
ried woman nor her estate receives any benefit, and which does
not in any manner refer to her separate property or undertake
to make any charge upon it, to be a contract relating to such
property.

If the giving of a note or a bond could be considered as equiv-
alent to an appointment or charge upon her separate estate, and
the source of the equity against her be found in such a charge

or appointment, there would seem to be no well founded distinction between a contract by her as a surety and a contract as principal. But against this the reasoning in *Murray* v. *Barlee,* and *Owens* v. *Dickenson,* before cited, is quite conclusive.

And we think, upon mature and full consideration, that the whole doctrine of the liability of her separate estate to discharge her general engagements rests upon grounds which are artificial, and which depend upon implications too subtle and refined. The true limitations upon the authority of a court of equity in relation to the subject are stated with great clearness and precision in the elaborate and well reasoned opinions of the court of appeals in New York in the case of *Yale* v. *Dederer.* And our conclusion is, that when by the contract the debt is made expressly a charge upon the separate estate, or is expressly contracted upon its credit, or when the consideration goes to the benefit of such estate, or to enhance its value, then equity will decree that it shall be paid from such estate or its income, to the extent to which the power of disposal by the married woman may go. But where she is a mere surety, or makes the contract for the accommodation of another, without consideration received by her, the contract being void at law, equity will not enforce it against her estate, unless an express instrument makes the debt a charge upon it.

*Demurrer sustained, and bill dismissed, with costs.*

*G. H. Preston,* for the defendants.

*A. G. Burke,* for the plaintiff.