QUASSAIC NATIONAL BANK OF NEWBURGH, appellant, v. WADDELL.

*Married women — charging separate estate.*

The defendant, a married woman, owned a house and twenty acres of land, and managed the place, making necessary purchases and superintending the servants. She carried on no other business. She opened a bank account with plaintiff and obtained money which she stated was to be used for the business purposes of her place ; and plaintiff discounted her notes on the credit of her separate estate. In an action on a promissory note made by defendant for a balance due plaintiff on the bank account ; *held*, that under the statutes relating to married women, plaintiff could recover, although the intention to charge defendant's separate estate did not appear on the face of the note. In such a case it is not material whether or not defendant actually applied the loans to the benefit of her separate estate.

APPEAL from a judgment against plaintiff entered upon the report of a referee. The opinion states the case.

*H. R. Anderson* and *R. E. Deyo,* for appellants.

*James M. Smith,* for respondent, cited *Second National Bank of Watkins* v. *Miller,* 2 N. Y. Sup. 104; *Yale* v. *Dederer,* 22 N. Y. 456 ; *White* v. *McNett,* 33 id. 371; *Shorter* v. *Nelson,* 4 Lans. 114.

DAVIS, P. J. This action was brought on a promissory note, made by the defendant, for a balance due on her general bank account with plaintiff.

The learned referee has found that, at the time of the several transactions between the bank and the defendant, the defendant was a married woman and wife of one William C. H. Waddell, and owned a house and about twenty acres of land at Newburgh; that prior to 1860, she had been in the habit of occasionally getting a note discounted at plaintiff's bank for her own benefit; that in the year 1860, she opened a bank account, receiving a pass-book, and depositing money to her credit either by separate deposits made by her, or the proceeds of her own notes discounted for her by the bank, which money she drew out from time to time by check; that she managed her place at Newburgh herself, buying what was necessary for it and paying for such purchases sometimes in money, sometimes by check upon the plaintiff, and sometimes by her own note; that she hired persons to work upon the said place, repairing her house and ground, and paid the persons so employed herself, by check or her note, or in money; that she was living with her husband; that he was away during the week, returning on Saturday and remaining till Monday or Tuesday; and that he did something for the support of the family; that at the time of obtaining the loan at plaintiff's bank, the defendant stated that said place was hers, and she was carrrying it on and wanted to open an account with plaintiff; that she obtained moneys of plaintiff by discount of her own notes, which moneys she stated were to be used for the business purposes of her place, and on one occasion to pay interest upon mortgages then upon the said place, and the notes thus discounted for the defendant by the plaintiff were discounted on the credit of her said separate estate and for her benefit; that the account so opened at the bank was continued from 1860 to the time

the note in suit was given, a period of about three years; that subsequently to opening the account she gave a chattel mortgage on the furniture in her house, which was her separate estate, to secure the moneys then or thereafter to be advanced, but nothing was realized on that mortgage; that she also gave a mortgage on her real estate, on which was realized a small surplus on the sale of the property on a prior mortgage; that defendant's place was wholly managed by herself, and that such management consisted in the usual superintendence and direction of a household and of out-door farm laborers and servants; that defendant did not carry on any trade or business during the period of her dealings with plaintiff; "that she had sources of income irrespective of her said property at Newburgh, and that there was no evidence satisfactorily showing that any of the specific sums of money obtained by defendant of plaintiff were ever used for the benefit of the defendant's separate estate."

And upon these facts the referee reported, as a conclusion of law, that plaintiff was not entitled to any relief, and that defendant was entitled to judgment with costs.

It is very apparent, from the facts found in this case, that the debt of the defendant to plaintiff was contracted on the credit of her separate estate and for her own benefit. She did not, in respect to it, occupy in any sense the relation of surety, but was in all respects the principal debtor. The question is not, therefore, the one involved in *Yale* v. *Dederer*, 18 N. Y. 265; 22 id. 450, where it was sought to charge the separate estate of a married woman for a debt created " in no way for the benefit of such estate, but as surety merely for her husband." That case adjudged that, to charge the separate estate under such circumstances, the intention so to charge must be expressed in the note or instrument, or indicated in such form as to create a specific charge. The judges who pronounced the several opinions of the court recognize a different rule where the debt is created by the wife herself for the benefit of her separate estate or on its credit. Judge HARRIS says (18 N. Y. 284): "I think the equitable rule is that which has been invariably adopted in this State, which is, that where the intention to create the charge has not been expressed, and can only be implied from the fact that she has become indebted either individually or jointly with her husband, it must appear that the debt was contracted for the benefit of her separate estate, or for her own benefit, upon the credit of her

separate estate, before the estate can be charged with its payment; " and when the case came a second time before the court, Judge SELDEN said (22 N. Y. 460): "It is plain that no debt can be a charge which is not connected by agreement, either express or implied, with the estate. If contracted for the direct benefit of the estate itself, it would of course become a lien upon a well-founded principle that the parties so intended, and in analogy to the doctrine of equitable mortgage for purchase-money."

Before our " married woman" statutes, it was the settled doctrine of courts of equity that where the consideration of a debt contracted by a married woman is one going to the direct benefit of her estate or for the benefit of herself on the credit of 'her estate, the intention to charge the separate estate need not be stated in the contract or instrument evidencing the indebtedness.

In the *North American Coal Co.* v. *Dyett,* 7 Paige, 9, the chancellor held that a *feme covert* as to her separate estate is to be considered as a *feme sole,* and may bind such separate estate for the payment of debts contracted for its' benefit or for her own benefit, upon the credit of her separate estate. The case was affirmed in the court of errors. *Dyatt* v. *North American Coal Co.,* 20 Wend. 570.

The same rule was repeated by the chancellor in *Gardner* v. *Gardner,* 7 Paige, 112; and in the same case, when reversed on other* points in the court of errors, COWEN, J., says: " The better opinion is, that separate debts contracted by her expressly on her own account, shall in all cases be considered an appointment or appropriation for the benefit of the creditor as to so much of her separate estate as is sufficient to pay the debt."

Vice-chancellor SANDFORD reiterates this rule in *Curtis* v. *Engel,* 2 Sandf. Ch. 287; saying that " it must be shown that the debt was contracted for the benefit of her separate estate, or for her own benefit upon the credit of the separate estate." *Yale* v. *Dederer* does not conflict with these cases, but distinguishes and approves them, and they are recognized as correct expositions of the law in the later cases. *Ballin* v. *Dillaye,* 37 N. Y. 35; *Corn Exchange Ins. Co.* v. *Babcock,* 42 id. 613.

In the last of these cases, HUNT, commissioner, says: "Under our decision the liability arises *ipso facto* where the debt is for the benefit of her estate. Where she incurs the liability for another, there is required then the further condition that the intent to make

the charge must be declared in the contract creating the indebtedness."

In the case before us, Mrs. Waddell undisputedly contracted the debt for herself. She received the moneys, or checked against them, for her own use. She availed herself of the credit which the ownership and possession of a separate estate conferred upon her and incurred the indebtedness with knowledge that the bank was giving credit to herself alone, relying upon her separate estate as the source of payment. And so the learned referee has found, upon abundant evidence, that the notes (for which the note in suit was given), were discounted on the credit of her separate estate and for her benefit.

This brings the case directly within one of the alternatives of the rule in equity, as settled by the authorities above cited.

The complaint in the case contains averments sufficient to uphold a judgment in the nature of the equitable decree rendered in the several suits in chancery above referred to; and it is settled that, under our present system, the party is not to be turned out of court because his prayer for judgment indicates a conception on his part that his remedy is a legal rather than an equitable one. *Phillips* v. *Gorham*, 17 N. Y. 270; *Newark Ice Co.* v. *North Western Ins. Co.*, 23 id. 357; *Corn Exchange Ins. Co.* v. *Babcock*, 42 id. 646; *Emery* v. *Pease*, 20 id. 62; *Barlow* v. *Scott*, 24 id. 45.

It may be added that the evidence in this case showed, and the referee has found, that a part of the money borrowed by defendant was so borrowed to pay interest on mortgages of her real estate. This having been done on her separate credit cannot well be otherwise held than to have been a debt created for the benefit of her separate estate.

The finding of the referee, that " there is no evidence satisfactorily showing that any of the specific sums of money obtained by the defendant of the plaintiff was ever used for the benefit of the defendant's separate estate " seems to have led him to the conclusion that this action could not be maintained. The finding is not that *in fact* the money was not so used, but that there is an absence of satisfactory evidence of such fact. The presumption upon the other facts found by the referee, and from the testimony as to what transpired at the time the bank account was opened, is very strong that the money was used for her separate estate, and if the fact itself was very material, it devolved upon the defendant to rebut the pre-

sumption. *Gardner* v. *Gardner*, 7 Paige, 112 ; 1 White & Tudor's Leading Cases in Eq. 324. But we think the fact not material where it clearly appears that the debt was contracted by the married woman as her individual debt, for her own benefit, on the credit of her separate estate.

We think, also, that there was sufficient evidence to render the defendant liable in this case *at law,* as a *feme sole,* under the existing statutes.

The statutes provide that a married woman may carry on any trade or business on her sole and separate account ; and the third section of the act of 1862, chap. 172, gives to any married woman, possessed of real estate as her separate property, the right to do any act, with reference to the same, with like effect as if she were unmarried ; and the seventh section of the same act declares that any married woman, while married, may sue and be sued, in all matters having relation to her sole and separate property, in the same manner as if she were sole.

The defendant owned, as her separate property, a place at or near Newburgh, of twenty acres. The referee has found that she " managed her said place herself, buying what was necessary for it, paying for such purchases sometimes in money, sometimes by check on plaintiff, and sometimes by her note ;" that she hired persons to work on her said place, repairing her house and grounds, paying them in like manner ; and again, in the eleventh finding, " that the said place was wholly managed by the defendant, and that such management consisted in the usual superintendence and direction of a household, and of the out-door farm laborers and servants."

But he finds also that she " did not carry on any trade or business during the period of her dealings with plaintiff." This last finding should be construed as intending to find that what she did, on and about her place, was not a trade or business within the meaning of the statute.

We think the carrying on of such a place, if managed as a farm, involving the necessity of employing and paying farm laborers, may be a *business* within the meaning of the statute. Farming is not only a business, but as important a one as any other occupation, and we should have no difficulty in holding that a married woman who carries on farming is within the protection of the statute, and subject to its liabilities.

But, under the third and seventh sections of the act of 1862, a

married woman owning real estate as her separate property is empowered to do any act in reference to it as if she were unmarried, and she may " sue and be sued, in all matters having relation to her sole and separate property," in the same manner as if she were sole. If, therefore, she can carry on a place like that of Mrs. Waddell, employing labor, improving and cultivating as a farm or otherwise her separate property, it is not easy to see why she may not be sued upon a note given to borrow money, which she avows is to be used for such purposes, and, *a fortiori*, where she is not liable for moneys borrowed to pay off incumbrances on her property.

The law takes off for her protection all the embarrassment of the married relation in respect of separate real estate, and makes her in regard to it a *feme sole*, *pro hac vice*, and it continues that peculiar condition in all matters having relation to such separate property as well when she is sued as when she sues. *Frecking* v. *Rolland*, 53 N. Y. 422.

The judgment should be reversed and a new trial granted, with costs to abide event.

DANIELS and WESTBROOK, JJ., concurred.

*Judgment reversed and new trial ordered.*