JOSEPH WESTFALL, ADMINISTRATOR, ETC., OF MARY WESTFALL, DECEASED, APPELLANT, v. HENRY WESTFALL, RESPONDENT.

*Absolute deed, when in fact a mortgage — the widow of the grantor (mortgagor) must tender the amount due, before she can obtain her dower — claim for dower, when barred by the statute of limitations.*

In 1818 George D. Westfall and wife conveyed certain land to Samuel D. Westfall by a deed absolute on its face, but which was in fact a mortgage. George D. died in 1827, leaving a widow, Mary, and eight children. In 1832 two of the children, Joseph and Samuel D., 3d, purchased the land from Samuel D. Westfall (whether or not in good faith, believing his title to be good, was in dispute), and thereafter, Joseph having purchased his brother's interest, conveyed a portion of it to one Vandermark for $4,891. One of the children died unmarried and intestate before the conveyance. The widow made no claim to dower in the land or its proceeds, nor to a life estate in the interest of the deceased child. Mary, the widow, died February 14, 1870, and Joseph was appointed her administrator. Upon his accounting the surrogate charged him with the dower interest of his mother in the proceeds of the sale to Vandermark, and with the life estate in one-eighth of the same subject to such dower, less the lien of Samuel D. Westfall, with interest on such amount from the date of the conveyance.

*Held,* that even if the proceeds of the sale were to be treated as land, neither the widow nor the heirs could make any claim thereto without first tendering the amount due, and to secure which the conveyance was made.

That in any event both claims were barred by the statute of limitations.

APPEAL from the decree of the surrogate of Monroe county, made upon the final accounting of the administrator, adjudging the

administrator indebted to the estate of Mary Westfall in the sum of $6,291.92, and directing payment thereof to respondent—less $800 allowed for costs. The administrator presented his account and his individual claim against the estate, and the contestant filed objections thereto, and a reference to an auditor was had, and his report was presented to the surrogate, who took some further proofs and heard the parties, and modified the findings of the auditor, and made the decree appealed from.

In June, 1818, George D. Westfall owned about 252 acres of land in Ontario, and with his wife Mary executed a warranty deed thereof to one Samuel D. Westfall, his brother. George D. died in 1827, leaving his widow Mary and eight children, to wit, Samuel D., 3d, Joseph, Henry, George, Mary, Lydia, Sarah, and Cynthia Jane. In 1832, September 15, Joseph and Samuel D., 3d, made an agreement to purchase the lands for $864, and Samuel D. and his wife, on the 15th day of December, 1832, conveyed 124 acres of the farm to Joseph and Samuel D., 3d. There was a dispute as to whether Joseph and Samuel D., 3d, took, without knowledge of the conveyance, to their grantor being simply a mortgage. December 12, 1833, Joseph and Samuel D., 3d, partitioned the 124 acres between themselves ; September 3, 1834, Joseph purchased of Samuel D., 3d, his interest in the 124 acres; November, 1837, Joseph purchased the interest of Samuel D., 3d, in the rest of the 252 acres, and Samuel D. shortly thereafter removed to Michigan; Cynthia Jane, one of the eight children, died in October, 1835, intestate, aged about eleven years. October 1, 1836, Joseph sold and conveyed the 124 acres to Orson and Frederick Vandermark, by warranty deed, for $4,891. In March, 1838, Samuel D. conveyed the balance of the 252 acres to Joseph; Joseph paid Samuel D., 2d, $864, and to Samuel D., 3d, $1,500 for his interest. In 1837 a question arose as to the title of Vandermark, and the evidence tended to show an amicable adjustment between Joseph, the widow Mary, and the heirs; and conveyances were executed with a view of perfecting the title of the Vandermarks to the 124 acres, and to Henry and George to the balance of the 128 acres. Mary, the widow, gave her quit-claim deed of all her interest in the whole farm to Henry and George ; they gave a bond to pay her an

annual sum of $70, and $1,000. That same day Joseph gave a quit-claim deed to Henry and George of the 128 acres. On the 4th of January, 1837, Joseph gave a quit-claim to Henry and George of the 128 acres. It seems to have been understood at the time of the adjustment that Samuel D. held the title under a deed absolute on its face, which was, in fact, intended as a mortgage. The evidence tended to show that the purchase by Joseph and Samuel D., 3d, was in good faith; Joseph believing that Samuel D.'s title had become absolute. It also appears that Mary executed a deed to Henry and George of her interest in the farm of 252 acres in 1837. Mary, in her lifetime, made no claim upon Joseph for any of the land, nor for any of the money received by him for his conveyance to the Vandermarks. The surrogate held that Joseph, the administrator, was liable to his mother's estate for the interest on ten-twenty-fourths of the $4,391, the sum for which he sold part of the premises in question to the Vandermarks, for the dower interest of the mother, and a life estate in one-eighth of the sum, subject to dower, less Samuel D. Westfall's lien; and also for interest on it from the 1st of October, 1836, the day of the sale to the Vandermarks, down to the day of her death, which was on the 14th day of February, 1870.

*D. C. Hyde*, for the appellant.

*C. Mason*, for the respondent.

HARDIN, J. :

The surrogate has jurisdiction to decide upon all claims arising between the administrator and the estate of the deceased, whether such claims be equitable or legal. (*Gardner* v. *Gardner*, 7 Paige, 112; *Jumel* v. *Jumel*, id., 591; Dayton, Surrogate, 598.) It was therefore proper to inquire as to the supposed liability of the administrator to the estate, and the surrogate had jurisdiction to pass upon the questions made in respect thereto. (*Jumel* v. *Jumel*, 7 Paige, 591.) It may be assumed that the conveyance by George D. Westfall and his wife to Samuel D. Westfall, though absolute upon its face, was, in fact, a security by way of mortgage. (*Horn* v. *Keteltas*, 46 N. Y., 608.) It was recorded

simply as a deed, and therefore a purchaser from the grantee, in good faith, or from one deriving title from the grantee, in good faith, with no actual notice of the fact that it was a mortgage, would acquire a good title. (Willard's Eq. Jur., 430.)

Joseph Westfall's conveyance on the 1st day of October, 1836, to the Vandermarks, of the 124 acres, vested in them a good title to the premises. It may be assumed that Joseph would have held the premises subject to his mother's dower, and to her life estate in Cynthia's share, and that upon an action brought against him to redeem them from the mortgage debt, the amount being ascertained and paid off or tendered, that the mother would have been entitled to recover her dower and the life estate in Cynthia's share. But that action was not brought by her while Joseph had the title to the premises. He sold the premises and received pay therefor from the Vandermarks, and they acquired a good title to them, as we have before seen : now assuming the moneys received by Joseph for the sale to be, for the purposes of the question made here, land, still, the mother must have the amount of the mortgage debt ascertained and paid or tendered, in order to entitle her to come in for any share of the fund remaining after the mortgage debt was paid. She made no claim to such moneys in her lifetime, she did not seek to redeem her dower, nor to redeem her life estate in Cynthia's share. Presumptively she knew of the sale made by Joseph to the Vandermarks, in October, 1836, and she made no claim upon him prior to her death, which occurred February 14, 1870. Assuming that she had the same right to the moneys that she would to the lands, had they remained in the hands and possession of Joseph, she failed to bring her action in equity for an accounting and ascertainment of the amount due on the mortgage debt, and to redeem therefrom within ten years, and her right of action must be held to be barred by the lapse of thirty-four years or upwards.

It was held that such an action must be brought within ten years in *Miner* v. *Beekman* (50 N. Y., 337.) In *Hubbell* v. *Sibley* (50 N. Y., 469), it was held that such an action is purely an equitable one and must be brought within ten years, and it was held in that case that the statute begins to run when the mortgagee enters under claim of title. Now, it may be said upon

the facts in this case that when Joseph bought the 124 acres in September, 1834, he went into possession as mortgagee and claimed to own the lands.

Again, in October, 1836, when he gave his warranty deed to the Vandermarks, he claimed to own the lands, and took and received the moneys, representing the purchase-money as his own and claimed them, and continued to claim to own them, down to the time of the death of his mother. She made no claim to the contrary of him. She might have brought a suit to have her rights ascertained and declared, and for leave to pay off the mortgage debt. She delayed to do that while Joseph had the possession of the lands, and she did not bring her action within her life-time. (2 Wash. Real Estate, 164, book 1, m. p. 555; *Sawyer* v. *Spofford*, 4 Cush., 599.) And we think her estate cannot enforce, against her administrator, a claim to any of the moneys received by Joseph at the time of the sale to the Vandermarks.

The claim is barred by the statute of limitations. (3 R. S. [5th ed.], 515, Code, § 115.) This defense was duly insisted upon before the surrogate, and, we think, was improperly overruled. (*Smith* v. *Remington*, 42 Barb., 75.) If it be assumed that the title to the lands remained in the original grantor, inasmuch as his deed was but a mortgage, and that his heirs and widow took from him, then they should have brought their action to redeem or tendered the money due upon the mortgage debt as a condition precedent to the right to bring a law action for the land or the moneys received therefor. (*Trimm* v. *Marsh*, 54 N. Y., 599.)

The action at law was not brought before the same became barred by the statute. Dower is barred by lapse of twenty years. (3 R. S. [5th ed.], 33.) In any aspect we can look upon the claim set up for the proceeds of the land or for the land, we think it must be held barred by the statute of limitations. (*Borst* v. *Corey*, 15 N. Y., 505.) The surrogate therefore erred in charging the administrator, in the settlement of his accounts, with the claim made for a portion of the moneys he received upon the sale of the lands in October, 1836, to the Vandermarks, and for that error the decree should be reversed and the proceedings

remitted to the surrogate of Monroe, with costs of this appeal allowed to the appellant, to be taxed and allowed him upon the final accounting out of the estate.

Talcott, P. J., and Smith, J., concurred.

Decree of the surrogate of Monroe county reversed, and proceedings remitted to the surrogate, with costs of this appeal allowed to the defendant on the final accounting.