# Cases

# FOURTH DEPARTMENT,

# GENERAL TERM,

## January, 1880.

---

THOMAS RICHARDSON AND ANNIE WIGHTMAN, ADMINISTRATORS OF JOSEPH N. WIGHTMAN, DECEASED, APPELLANTS, *v.* HUMPHREY G. ROOT AND OTHERS, RESPONDENTS.

*Order drawn on a fund — when valid as between drawer and payee — right of a creditor of an intestate to attack a transfer, made by such an order, by the intestate in his life-time to his wife — surrogate has no jurisdiction.*

Shortly before his death the plaintiff's intestate delivered to his wife an order drawn by him on a firm in New York, who were indebted to him for services rendered in malting, by which he directed the firm to pay to his wife the balance due to him for malting after deducting all expenses, and charge to his account for malting. The order was forwarded to the firm the same day and the balance of the account subsequently paid by it to the wife. The wife, who was one of the administrators of her husband, did not credit the estate with the amount so received, but claimed that it was given to her by her husband in payment of a debt due from him. The personal estate was insufficient to pay the debts and the solvency of the estate was in dispute.

Upon an accounting before the surrogate, the account of the administrators was, upon the application of a creditor, surcharged with the amount so received.

*Held,* that the order was valid as between the intestate and his wife, and operated as an equitable assignment of the fund.

That having been accepted and paid by the drawee, its validity could only be challenged by a creditor of the intestate on the ground that, as to him, it was fraudulent.

That the surrogate had no jurisdiction to pass upon this question, and that the creditor's only remedy was to bring an action in a court having jurisdiction thereof.

HUN— VOL. XIX.        60

APPEAL from a part of the decree of the surrogate of Herkimer county, made on a final accounting by the appellants as administrators of, etc., of Joseph N. Wightman, deceased. The portion of the decree appealed from related to the surcharging of the administrators with the sum of $1,014, with interest.

*J. A. Steele*, for the appellants.

*J. B. Rafter*, for the respondents.

SMITH, J. :

The intestate, in his life-time, held a claim against F. G. & L. N. Van Vliet, of New York city, for the sum of $1,014. On the day before he died he delivered to his wife, Annie Wightman, an order or draft upon the Van Vliets, of which the following is a copy :

"MOHAWK, *April* 29, 1873.

" Please pay to my wife, Mrs. Annie Wightman, the balance due me for malting, up to the close of this season, after deducting all expenses which you may incur in shipping the malt ; and please pay it in installments, if she wishes it, always saving yourself whole for said expense, and charge the same to account for malting.           " Yours, etc.,

" J. N. WIGHTMAN.

" To F. G. & L. N. VAN VLIET,

      " No. 5 Water street, New York City."

The paper was delivered to Mrs. Wightman about one o'clock in the afternoon of the day on which it was drawn, and soon afterwards was sent to the drawees by mail. After the death of the intestate, Mrs. Wightman received from the Van Vliets $1,014 on account of the claim, $1,000 of which she placed with Mr. Richardson, her co-administrator, and she retained the remainder in her own hands. The personal estate was insufficient to pay the debts of the intestate. The intestate left a considerable real estate, parcels of which were mortgaged, and the testimony before the surrogate was conflicting as to the value of the real estate. One of the questions litigated was whether the estate was insolvent.

Letters of administration were issued to Mrs. Wightman and

Mr. Richardson, and upon their final accounting they did not include the money received by Mrs. Wightman from the Van Vliets, but Mrs. Wightman claimed it as her own. The respondents, two of the creditors of the intestate, claimed that the account should be surcharged with the amount so received, and interest thereon from the time it was so received, and the surrogate allowed the claim and surcharged the account accordingly. From that portion of the decree this appeal is taken.

Objection was made before the surrogate, and is now urged, that he had not jurisdiction to try the claim thus set up by the creditors. We think there is force in the objection. No question is or can be made by the creditors, but that the draft or order was valid as between Wightman and his wife, and operated as an equitable assignment to her of the claim against the drawees. The only parties who could object that the instrument did not amount to an assignment of the claim were the drawees, and they having recognized its validity by paying it to Mrs. Wightman, the question is foreclosed. The only ground on which the respondents can attack the transfer is that although it was valid as between the parties to the paper, it was fraudulent and void as against the creditors of Wightman. Has the surrogate jurisdiction to try that question? As between Mrs. Wightman and the next of kin, the money is clearly hers. It would be so, as between her and Wightman, if he were living. And if Wightman were living, the only remedy of the creditors would be by an action against him and his wife to impeach the transfer as fraudulent and to reach the fund. We are not aware of any authority for saying that the surrogate has jurisdiction to try such an issue. The cases cited by the respondent's counsel fall far short of it. In *Merchant* v. *Merchant* (2 Bradf., 447), the question was whether an alleged gift to the executor by the testator had been revoked by him, so that the litigation was directly between the executor and the estate. There are numerous cases in which it has been held that the surrogate has jurisdiction to try claims of an executor or administrator against the estate. Such are the recent cases of *Kyle* v. *Kyle* (67 N. Y., 408); *Shakespeare* v. *Markham* (72 id., 400); and *Boughton* v. *Flint* (74 id., 476). They hold that the power is given by section 33

(2 R. S., 88), which abrogated the common law rule giving an administrator's debt preference over others, and allowing him to retain assets in payment, and provided that no part of the assets shall be retained by an executor or administrator in satisfaction of his own claim until it shall have been proved to and allowed by the surrogate. But here no claim is made by the administrators against the estate, and they do not seek to retain any of the assets which were left by the intestate at the time of his death. The issue presented results from an effort of some of the creditors to overhaul a transfer made by the intestate during his life-time to his wife, who happens to be the administratrix. It is said by the respondent's counsel, that the transfer was a mere gift, *causa mortis*. But there was uncontradicted evidence tending to show that the intestate was indebted to his wife in the amount of the claim transferred, for services rendered by her before their marriage ; and there was no evidence that the transfer was made in expectation of death, except so far as the fact might be inferred from the circumstance that the intestate had then been sick nearly a year, and that he died the next day. So far as the question of jurisdiction is concerned, it is difficult to see of what consequence it is whether the transfer was a gift, or a sale for a good and sufficient consideration ; and if a gift, whether it was or was not made in expectation of death, it not having been revoked. In either case, it would be competent for creditors to attack the transfer on the ground of fraud, and if the surrogate has jurisdiction to try that issue it would seem that the jurisdiction must extend to every like issue however large the amount of the consideration, or however considerable the length of time intervening between the date of the transfer and the death of the intestate.

It has been frequently held, also, that the surrogate has jurisdiction upon the accounting of an executor or administrator, to try all claims against him in favor of the estate. (*Gardner* v. *Gardner*, 7 Paige, 112 ; *Jumel* v. *Jumel*, id., 591 ; *Westfall* v. *Westfall*, 16 Hun, 541.) But our attention has not been called to a reported case holding that the surrogate may try an issue as to the good faith of a transfer made by the deceased to the person who subsequently became the administrator of his estate, which

transfer was confessedly valid between the parties, and good and effectual as against the heirs and next of kin. Nor are we aware of any statute giving such jurisdiction to the surrogate. We think that the issue as to the good faith of the transfer can only be tried in an action brought in a court of competent jurisdiction.

The portion of the decree appealed from is reversed, with costs of the appeal to the appellants.

TALCOTT, P. J., and HARDIN, J., concurred.

That portion of the decree of the surrogate of Herkimer county which is appealed from reversed, and proceedings remitted to said surrogate, with directions to amend his decree accordingly, with costs of the appeal to be paid by the respondents.