Sneed, J.,
delivered the opinion of the Court.
The Court is of opinion that the decree of his Honor, the Chancellor, dismissing the bill and discharging' the .attachment in this canse is correct, and the same must be affirmed. It is an effort on the part of the complainant to subject the separate estate of the defendant — a feme covert — to the satisfaction of an alleged contract to pay him ten thousand dollars, evidenced by a promissory note in the words and figures following:
“ Columbia, Sept. 17th, 1864.
“On or before the' 17th September, 1865, we promise to pay Abner Shaeldett, or ordef, ten thou *106 sand dollars for value received, with, interest from date.
“Rebecca Polk.
“ Geo. W. Polk.
The defendant, Rebecca, was the wife of Andrew J. Polk, and, by deed of gift from her father, was the owner of a separate and independent life estate in certain plantations in Maury county, Tennessee, and in Tunica county, Mississippi, and was managing the same as a feme .sole, and enjoying the incomes and profits thereof.
On the 20th September, 1865, she was in Europe, whither she had gone, as she alleges, for a temporary sojourn, accompanied by her husband and her children. On that day this hill was filed in the Chancery Court at Columbia, charging the indebtedness aforesaid, and praying an attachment against the 'said separate estate, alleging non-residence as the ground of said attachment. The alleged ground of the attachment is not otherwise traversed than by a positive denial of the permanent non-residence in the answer. The bill charges that the said promissory note was given for ten thousand dollars loaned .by the complainant to the defendant to enable her to carry on her plantations and to buy supplies for her laborers — and to he expended for the general benefit of said separate estate — that the same was loaned at the request of defendant, and upon her express promise, and undertaking that the same should he paid out of the incomes of 1864,- and that the separate estate should *107 be bound absolutely for Ms indemnity. Tbe complainant filed two amended and supplemental bills, in wbicb, reiterating tbe general charges of tbe original bill, be explains tbe circumstances under wbicb tbe name of Geo. W. Polk appears as a joint maker of said promissory note, stating tbat it was done at tbe suggestion of tbe defendant, Rebecca, and witb no purpose on tbe part of complainant to look to the said Geo. ~W. Polk as security — or indeed to any other indemnity but tbe separate estate and its incomes, according to tbe pledges of tbe defendant Rebecca. He makes no direct charge of fraud against defendant, but seems in bis first amended bill to impute a wrong to her in tbe fact, tbat by a written agreement between them, be, as her agent, bad undertaken to save and ship to Hew York her cotton crop of 1864 — . eighty-five bales of wbicb bad been actually shipped to tbat market where tbe understanding was tbat be was to sell it and re-imburse himself to tbe extent of bis loan and tbe commissions of bis agency— but tbat tbe defendant bad caused tbe same to be shipped to Liverpool, where she followed it, and got tbe exclusive benefit of its proceeds; but in bis second amended bill this transaction is fully explained.
Tbe answer admits tbe loan and tbe execution of tbe note, and tbat said loan was contracted “for tbe purpose of supplying respondent’s farm in Mississippi, and of getting tbe crop thereon gathered and carried to market” — and tbat tbe said amount *108 was furnished, in the' main, by the complainant in supplies' bought by him, as her agent, for the Mississippi farm for 1864. The answer positively denies that the defendant suggested the name of Geo. W. Polk as security — but asserts that the complainant made the suretyship of Geo. "W. Polk an express condition of said loan, and that no reference whatever was made in the negotiations either by the complainant or the defendant to the liability of her separate estate or its incomes for the amount of said loan. The answer thus disposes of these averments of the bill. “In answer to the several allegations in complainant’s bill, in which he charges that the respondent borrowed or proposed to' borrow the money aforesaid upon the credit of her separate estate, or. that she pledged or ever proposed to pledge her separate estate, or any portion thereof, or its incomes, respondent interposes a positive, unqualified, unequivocal, flat denial. She denies that her separate estate was ever alluded to during this negotiation, and so far as respondent is concerned, never thought of, nor does she believe that complainant, during the negotiations for the lending, ever thought of her separate estate, or its income, as indemnity. Respondent repeats that each and every allegation in the bill which charges that there was any contract agreement oy understanding, whether expressed or implied, by which the separate estate of respondent, or its income, was to be pledged, bound, or in any way held responsible for the payment of said debt, is absolutely and unqualifiedly *109 false in all its length and breadth,, whether such charge is’ made in the original bill, or- whether it is made in express terms, or by implication, or innuendo. She asked for the loan in full confidence of her ability to repay it — and she expected and intended to repay it out of her own means — but complainant did not require her to make any such promise or agreement, verbal or written. But he trusted alone to the promise of this resjmndent to pay — secured by the suretyship of Q-eo. W.. Polk.” She admits that-the eighty-five-bales of cotton were, by her order, shipped to Liverpool, whither she was about to embark — but avers that it was not so ordered until she had told the complainant that she was willing that he should then sell the cotton and dispose of the proceeds according to the writing between them, and he had declined to do so, assuring her that she might have another year’s credit on his debt, he, “the complainant, well knowing that she was on the eve of her embarkation for a temporary sojourn in Europe.”
It is shown in proof that said loan, or the larger portion of it, was expended by the complainant under his agency in the purchase of supplies and in the erection of improvements upon the Tunica plantation', and in expenses about the gathering, baling and shipment of the crop of 1864, raised upon said Tunica plantation. But there is no evidence whatever tending to show an agreement on the part of the respondent, either verbal or written, that her separate estate or any incomes thereof, should *110 be pledged or bound for the payment of said debt of ten thousand dollars. The decree was for the defendant “without prejudice to any rights complainant may have for relief against the separate estate of defendant Rebecca in Mississippi, for any moneys advanced and expended, by complainant for the benefit and preservation of said separate estate.” It does not appear that any portion of said loan of ten thousand dollars was expended in the preservation of, or for the benefit of that part of the separate estate lying within the jurisdiction of the Courts of this State, and which has been attached in this cause.
It will be observed, then, that the complainant’s case rests in part upon the alleged promise and undertaking of the respondent that her separate estate should be bound for the re-imbursement of the complainant, and the repeated averments in the bill to this effect, are positively denied in the' answer,while the complainant brings no proof in support of his bill, except the promissory note and the written agreement between the parties, by which the relation of principal and agent is created for a specified purpose. But neither upon the face of the note, nor by the terms of said agreement, can any charge he predicated upon the separate estate for the payment of this debt.
It is a well settled doctrine of the common law, that a feme covert, whose individuality is supposed to be merged in that of her husband, has no power to contract — and that, during that relation, and as long as the conjugal unity exists, all the undertakings *111 and promises of the wife, by which she seeks to bind herself in person or in property, are, in a court of law, held tb be absolutely void. But it is ■ equally well established that in the view of a court of equity, á wife having a separate estate, which, under the deed, will or settlement by which she holds, she controls and manages as a feme sole, enjoying the profits and incomes, may charge the same for her debts by any unequivocal act or engagement clearly indicating her purpose so to do, to tile extent of the power under the instrument under ‘which she claims.
The right thus to charge her estate in equity, results, it is said, from the jus disponendi which courts of equity regarded her as having — as incident to the full enjoyment of her property: Code, s. 318. The foundation of the rule is thus stated by Lord Brougham: “I take the 'foundation of the doctrine to be this: the wife has’ a separate estate subject to her own control, and exempt from all other interference or authority. If she cannot affect it, no one can; and the very object of the settlement which vests it in her exclusively,'“is- to enable her to deal with it as if she were dis-covert. The power to effect it being unquestionable, the only doubt that can arise is, whether or not sh^ has validly encumbered it:” Murray v. Barlee, 3 My. & K., 223. But the English authorities -have not been followed to their full extent in Tennessee.
This remedy of pursuing the separate estate for the payment of debts contracted by the feme covert, and of subjecting it to the satisfaction of liabilities *112 incurred for its benefit and preservation, is tire peculiar creature of a court of equity, and was supposed to rest, not so much, upon the’ obligatory force of the contract, which in law and equity both, was esteemed a nullity, as upon the fiction of an appointment or designation by the wife of her separate estate for that purpose. It is rather in the nature of a proceeding in rem upon the estate itself, than in 'personam against the feme covert personally, and rests upon the rules of justice and good conscience. In this view we are unable to see the value or necessity of any fiction of appointment, which is at last but an ingenious invention of the Courts to evade the inexorable doctrine of the law upon the nullity of the wife’s contracts. But however this may be, and upon whatever principle the jurisdiction may rest, courts of equity are not slow in such cases' to recognize the right of a feme covert to deal justly, and to lend her a helping hand in vindicating the right on behalf of those who have dealt with her to the benefit of herself, or the preservation of her estate, with a purpose and intention on both sides to encumber her estate for satisfaction, and with an authority on her part so to do. It has been held in other States that without regard to any appointment, or undertaking on her part that the separate estate should be bound, when a demand is based upon money expended, or beneficial service rendered toward its preservation, a court of equity will entertain a proceeding directly against the estate itself, for the satisfaction of the demand. And *113 in this respect it makes no difference whether she is controlling the same a feme sole, or a trustee controls it for her use and enjoyment. And this principle is extended in some of the authorities to the estate of infants, and all manner of trust estates: Carter v. Everleigh, 4 Dess., 19; James v. Mayrant, Id., 591; Montgomery v. Everleigh et al, 1 McCord, Ch. R., 267; 7 Paige, 112; 20 Wend., 570; 1 Sandf., 17; 2 Sandf., 287; 10 Paige, 343.
In one of the cases cited, "Hie Court said that “the plaintiffs, to sustain this suit, must show that the debt was contracted either for the benefit of the separate estate of the wife, or for her own benefit upon the credit of the separate' estate: Curtis v. Engel, 2 Sandf., Ch. R., 287; McCord on the Rights of Married "Women; Title, Separate Estate.
It would seem that this doctrine of holding the separate estate liable for d^bts created for its benefit and preservation, with or without an express undertaking to bind it, rests upon sound principle, and it was distinctly recognized in a rjjpent case decided by this Court, where it was held that such estates were bound for services rendered b-y solicitors, about their protection or preservation: Hunt v. McClanahan, 1 Heis., 509; Martha Grimes v. Weems, MS., Nash., 1870.
Hor do we understand that this doctrine was repudiated by this Court in the case Cherry v. Clements, 10 Hum., 553. In that case the notes were executed by Clements and wife, and Clements being insolvent, the complainant brought his bill to subject the wife’s *114 separate estate to the satisfaction of the claim, upon the ground that the goods were sold upon the credit of the separate estate, and at the request of the wife. This was denied, and there was no proof to sustain the allegations of the hill. . The Court held that the separate estate was not hound, and in criticising one of the cases above cited from 4 Dess. R., 19, upon the subject of the liability of the separate estate for moneys expended or services rendered for its benefit, without any undertaking to bind said estate, the Court said, “if such be the law in South Carolina, it is wholly contrary to the rule established in this State.” But in that case the husband had bought a cottin gin for the use of the plantation, the property of his wife, and had given his individual note for it— and the husband having become insolvent, a petition was filed to obtain satisfaction of the note out of the trust estate. And under the doctrine of the merger and extinguishment of' the original equitable remedy by the acceptance of the husband’s individual note, it will be observed that the South Carolina case might have rested on a totally different principle. It will be seen, however, that both in England and America there is great conflict of authority on this question. It is said by Mr. Story that it is agreed that there must be an intention to charge her separate estate, otherwise the debt will not affect it: 2 Story, Eq. Jur., § 1400. But this remark must be understood to apply to the general debts of the feme covert, and not such as are created for the express benefit or preservation of the estate itself.
*115 In regard to the precise question now before us, there is no conflict of authority in this State. The wife cannot bind her separate estate for the satisfaction of any general debt, without “proof of an express agreement to create such charge; it cannot be made liable by implication.” This is the exact language of the Courts; Litton v. Baldwin, 8 Hum., 209; Cherry v. Clements, 10 Hum., 555; Catron v. Warren, 1 Col., 358; Lowry v. Naff, 4 Col., 370. And it must be shown that she has power to charge the separate estate, either in express terms in the deed of settlement, or to be implied from the power vested in her to control it as a feme sole, and enjoy all the incomes and profits: Kirby v. Miller, 4 Col., 3; Burr v. Winn, MS., Brownsville, September Term, 1868. But to establish the express contract, circumstantial evidence may be admitted: Burr v. Winn, MS., Brownsville, April Term, 1868. We find in this case no evidence either positive or circumstantial, that the respondent contracted this loan of ten thousand dollars, with reference to the liability of her. property in Tennes1 see for its satisfaction.
The decree of the Chancellor is therefore affirmed.