E. R. PENNEBAKER, Comptroller, vs. H. T. TOMLINSON & others.

April Term, 1874.

INSURANCE COMPANIES—BONDS DEPOSITED—BENEFICIARIES.—Under the act of the Legislature requiring Insurance Companies to deposit bonds with the Comptroller " as security for risks taken by citizens of this state," the beneficiaries are such citizens of the state as, having taken out policies to cover risks, have suffered loss within the policy, or have become entitled to be repaid the premium, or any part thereof, in any of the contingencies in which such re-payment is demandable as of right, and insolvency of the company would be such a contingency; and all the beneficiaries are entitled to share the funds *pro rata.*

SAME—LAWYER'S FEES.—Counsel who have rendered professional services for the Insurance Company are not beneficiaries within the law, but may be entitled to priority of satisfaction to the extent of services rendered for the benefit of the trust, and to secure the fund.

*W. B. Reese,* for complainant.

*G. M. Fogg, Jr.,* for claimants of return premiums.

*Jno. H. Savage,* for other complainants.

THE CHANCELLOR :—When this case was before me at a former term upon demurrer, I came to the conclusion, and so declared in a written opinion, *ante*, that the bonds deposited with the comptroller of the state by foreign insurance companies, became a trust fund in his hands, in which, in the event of the insolvency of the company, certainly, and perhaps in any event, the beneficiaries under the statute directing the deposit, were entitled to share equally. No argument has now, upon the hearing of the cause, been submitted contesting this conclusion, nor have I seen anything which induces me to doubt its correctness. The only question remaining to be decided, therefore, is, who are the beneficiaries under the statute?

The language of the act is : " As security for risks taken by citizens of this state." It is clear, of course, that the statute is confined to " citizens of this state," and they alone can claim as beneficiaries of the fund. Whether citizens of other states might come in as creditors, under our laws, for any surplus after satisfying the claims of citizens, may be conceded in the case of the insolvency of the insurance company. For, in that event, such surplus might be paid over to the company, or its assignee ; and, if so, would be liable to creditors. But so long as the company continues to do business in the state, it is clear that the deposit, being a trust fund for our own citizens, could not be reached by foreign creditors at all.

The report of the clerk and master upon the claims filed in this cause, shows three different classes of claims of citizens of this state, viz :

1. Claims for actual losses by fire covered by policies of the insurance company.

2. Claims for premiums paid by the policy holders previous to the insolvency of the company in advance, as required by the terms of the policies, but which the claimants insist should be returned by the company as to so much thereof as was not actually earned when the company became insolvent.

3. Fees of counsel against the insurance company for professional services.

"As security for risks taken." These are words of broad signification, and certainly neither technical nor narrow. They are again used in the clause of the statute which follows the words quoted: "And if any insurance company in this state, or the agent of any insurance company of any other state, shall *take risks* without first making such deposit, the person so offending shall be guilty of a misdemeanor for each risk, and be fined not less than one hundred dollars for each offense." The same words "risks taken" and "take risks," are repeated in the act of 1868, ch. 79—T. & S. Rev. Sec. 1,830 C.—where the requirement of a deposit is extended to "every insurance company" doing ‚business in the state, "whether fire, marine, accident or life." The main intention, beyond question, is indemnity for our citizens.

The provisions that an insurance company shall not "take risks" without making the required deposit, and that the deposit shall be "as security for risks taken by citizens," are manifestly correlative. They mean precisely the same thing as to the company and the citizen. The "risks" provided for are, therefore, such as the insurance company assumes in the ordinary discharge of its corporate functions, namely, the "risks" covered by its policies. This is strengthened, if it needed strengthening, by the language of the act of 1870, 2d Sess., ch. 102, §§ 4 and 5—T. & S. Rev., §§ 1,830 *g*, 1,830 *h*,—being an act to regulate the business of life insurance.

The deposits required in those sections, are "for the protection of policy holders," "to secure the policy holders," "for the security of the policy holders."

The very object ‚of all insurance companies, is to "take risks," by the issuance of policies of insurance for certain premiums. To say, therefore, that a deposit shall be made "as security for risks taken by citizens," is simply to say that the deposit shall be for the security of citizens who

have taken out policies of insurance in the company. The usual contract of the policy is that if loss occur by reason of any of the risks insured against within the time limited, the company will re-imburse the policy holder to the extent of the loss, not exceeding the amount mentioned in the policy, and for which the premium is paid. But it is well settled that the contract of insurance is, like other contracts, required to be sustained by a consideration. In other words, it is a mutual contract, for which there must be a consideration on both sides. If it turns out after the contract is made, and the premiums paid, that the company never could sustain any risk, as, for example, if the house or ship insured had been burned previously, the insured would be entitled to a return of the premium. So most policies expressly provide that the company may terminate the risk at any time upon reasonable notice, and return of the premiums. So, if the charter expires or is forfeited pending the policy, it is clear that the insured is entitled to a return of the premium. The policy holder is, therefore, for the "risk taken" by his policy, entitled not merely to be paid the sum insured in case of loss, but to be repaid a proportional part of the premium in any of the contingencies in which such a repayment is demandable as of right. A deposit "as security for risks taken," would, I think, cover such a demand, as well as a demand for an actual loss. And, I think, also, the insolvency of the company is a good ground for demanding the portion of the premium which cannot be earned after that date.

The question seems to be of first impression. No authority has been referred to on the subject, nor have I been able, in the limited examination I have given the question, to find any.

The result is that the first and second class of claimants, as above mentioned, are beneficiaries under the statute, and entitled to share in the funds *pro rata.* The claims of the third class, namely, fees for professional services are not embraced by the act. The applicants are not claimants under policies issued by the company, or for "risks taken," within the meaning of the statute. But they may, nevertheless,

be entitled to claim priority of satisfaction out of the funds, if they have rendered services by which the trust has been benefitted or the fund for creditors increased, under the principle so ably and fully considered in *Shacklett* v. *Polk,* 4 Heisk. 104.

The complainant, as comptroller, is entitled to a perpetual injunction against the defendants taking any further proceedings, either in causes heretofore commenced or otherwise, in the matter of the trust funds in his hands by the deposit of bonds.

The decree will declare that all citizens of this state having claims against the home insurance company of New Haven, Connecticut, for "risks taken" as hereinbefore explained, are entitled to share *pro rata* in the funds derived or to be derived from said bonds held in trust, and any such claimant who may have received more than his *pro rata* share thereof since the insolvency of the company, must refund the surplus.

The clerk and master will give one month's public notice in some newspaper published at Nashville, to all claimants as aforesaid to file their claims in this cause and make themselves parties, otherwise they will be barred from participating in the bonds. After this, he will fix the time and place under the law and rules of this court, and hear proof and report upon the character and amount of the several claims filed, and entitled under this decree.

The claimants will not be entitled to any costs accrued after the filing of the bill in this cause. All other costs will be first paid out of the fund.