## ABNER SHACKLETT VS. REBECCA POLK.

1. CONTRACTS: *Construction thereof.*

　The general rule is that the validity of a contract depends upon the law of the place where made, but that the parties might refer to the law of the place where it was to be performed for the rule to govern it. A contract, although void by the law of another state, yet if made with reference to and for the benefit of property here, would be enforced here.

2. SAME: *Married woman: Separate property.*

A married woman, owning a plantation in this state, although resident in
another state, may make a contract for its improvement, support of la-
borers, services of an agent, etc., which the courts of this state would
enforce against her property, although such contract may be void by
the law of the place where made.

3. FEME COVERT: *Separate estate: Power to incumber same.*

Our statute, in reference to the separate property of married women, relates
to such property in this state, and not to the domicile of the married
woman, especially as to real estate employed in agriculture; she holds it
with all the rights defined by statute. Our statute does not require that
there should be an agreement with the creditor that her property should
be charged with the debt, as do the laws of Tennessee.

4. CONTRACTS: *When void on account of the late war.*

The late war was territorial, and *ipso facto* impressed a hostile character
upon the people and property of the insurgent states. The status of a
person was fixed by his residence, and intercourse, commerce and busi-
ness between persons of the different sections became illegal and void,
and goods carried across the interdicted lines became subject to forfeit-
ure. But where parties contracted within the lines of the United States
forces, to come into an insurgent state to gather a crop of cotton and
transport it into the United States, and provided in such contract that
clearances, licenses or permits are to be obtained for the purpose, it is
evident that the parties did not intend to violate the law, but to comply
with it.

5. SAME: *Power to borrow money.*

A married woman has no power, under the statute, to borrow money; yet
if the money, or any part of it, is used for the benefit of her separate
estate, she is liable for the amount so used.

6. SAME: *Power to bind estate.*

The deed or instrument which creates a separate estate in a married wo-
man is the measure of her right to bind it. If this contains no restric-
tions or limitations, then the statute is the measure of her right to bind
her. The court declined to express an opinion as to the effect of the
deed under which Mrs. P. held the Tunica county property.

ERROR to the Circuit Court of *Tunica* County.

Hon. C. C. SHACKLEFORD, Judge.

The defendant in error, a married woman residing in Ten-
nessee, owned and possessed a separate estate, real and personal

both in Tennessee, and in Tunica county, Mississippi. During the war she was planting cotton on her farm in Mississippi. After the federal troops reached and took possession of Memphis, and occupied Tennessee and part of Mississippi, and on the 16th day of September, 1864, the defendant in error, Mrs. Polk, constituted the plaintiff in error, Shacklett, her agent to take charge of her cotton crop in Mississippi, to gather, gin, bale, ship and sell the same in the market and to obtain permits from the federal authorities to do anything necessary in the premises.

On the next day, a further contract was entered into with reference to the first, by the terms of which Shacklett was to furnish supplies, clothing for the hands, buy rope and bailing and pay expense of shipping cotton, etc.

Shacklett was to receive for his services 10 per cent. on the net proceeds of the cotton crop and be reimbursed to the amount which he paid out for Mrs. Polk, who executed her note on the same day, to Shacklett for $10,000, with George W. Polk, her husband, as security. This amount was intended to cover the outlays to be made by him in his agency. Eighty-five bales of cotton were gathered, shipped to Memphis, thence to Liverpool. A partial settlement was had, embracing traveling expenses, etc., and the ten per cent. commissions. This amount was paid by Mrs. Polk, but did not include the large amount of outlay intended to be covered by the note of $10,000.

When the note matured, Mrs. Polk was in Europe, and Shacklett, by attachment in chancery, sought to subject her separate property in Tennessee, the case went to the supreme court, and was there decided against Shacklett.

Shacklett then brought this suit in the circuit court of Tunica connty, seeking to charge her separate estate in Mississippi with the debt and interest. Defendant filed sundry pleas, in substance, as follows:

1. *Res adjudicata* as to the same subject matter, between the same parties in the courts of Tennessee.

2. Plea of coverture.

3. That the contract was made in Tennessee, the parties resided in Tennessee and the note was payable there; that the contract was void by the laws of Tennessee, and could not, therefore, be enforced elsewhere.

4. As to count for loaned money, and for goods, wares and merchandise, sold and delivered, she pleaded the statute of limitations of three and six years.

5. That at the date of the note sued on, the war existed ; that the parties both resided in Columbia, Tennessee, which town was in the permanent occupation of the United States forces, and that the plantation about which the contract was made was then in armed occupation of the confederate forces, and therefore the contract could not bind the said property.

Demurrer was filed as to the first plea :

1. Because the judgment in Tennessee was no bar to the action in Mississippi.

2. Because the plea was illegal, informal and insufficient.

To the second plea, he replied that the contract was made for the benefit of her plantation in Mississippi, etc.

To the plea that the contract was void, he demurred.

To the plea that it was a Tennessee contract and void there, he replied (in substance), that though by the laws of Tennessee it did not bind her property in Tennessee, the laws of Mississippi did permit her to make such contracts with reference to her property here, and it was therefore binding on her property in this state.

The court below overruled the demurrer and extended it back to plaintiff's replication to the plea of coverture, and held the replication to be bad.

Plaintiff declined to reply further, and, by consent, took issue :

Plaintiff's charges were all refused ; they are in substance :

1. That if defendant was the owner of separate property in Mississippi, and borrowed the money for the purpose of procuring necessary supplies for her plantation and slaves, the contract is binding, although she was a married woman, residing in Tennessee, and the contract was made in that state.

2. If the jury believe that defendant was a nonresident of the state, and during the greater part of time since the contract, has been in Europe, and only came to her plantation for a few months at a time, the suit is not barred by the statute of limitations.

3. That it was not unlawful for plaintiff to lend defendant money, while within the federal lines, to buy supplies for her plantation and slaves, though the same were situated within the confederate lines.

4. That even though the original contract was illegal, the illegality has long since ceased, and if the defendant derived profit from the transaction, she cannot refuse to repay on account of said illegality.

At the instance of the defendant, the court charged the jury :

1. That if the note sued on was made by defendant in Tennessee, when and where she was a *feme covert*, then the same is void, and no recovery could be had.

2. If the jury believe from the evidence that defendant was, when she made the note, a *feme covert*, and that the consideration of the same was loaned money, and not in consideration of one or more of the following specified purposes, to-wit : "For family supplies or necessaries, wearing apparel of herself and children, or for their education, or for household furniture, or for carriage and horses, or for building on her land or premises, and the materials therefor, or for work and labor done for the use, benefit and improvement of her separate estate," then the law is for defendant, and they will so find.

3. That if the jury believe that defendant, being a *feme covert* resident in Tennessee, made the note within the federal lines during a state of war, and that by the contract between the parties the money was to be transported through the lines, and expended within the confederate lines for the benefit of defendant's slaves and plantation situated there, then such contract is void, and no recovery can be had.

The jury found a verdict for the defendant, and the case came to this court upon writ of error.

The following errors are assigned :

1. The court below erred in overruling plaintiff's demurrer to the fourth additional plea, filed by defendant, of February 27, 1873, and in extending said demurrer back to plaintiff's replication to defendant's plea of coverture.

2. The court below erred in refusing the instructions asked by plaintiff.

3. The court below erred in granting the instructions asked by defendant.

*White & Chalmers,* for plaintiff in error.

That defendant's fourth additional plea is demurrable, there cannot be a doubt. It seeks to annunciate that a citizen of the United States, within the lines of the armies during the war, could not bind his property situated outside of those lines. The question in Tennessee was, whether, at the time the money was borrowed, the defendant positively agreed that her separate property should be bound for the payment. In the absence of such a stipulation, the Tennessee courts held that the property in Tennessee was not bound, and dismissed the bill without prejudice to any rights complainant may have for relief against the separate estate in Mississippi, for any money advanced and expended by complainanant for the benefit and preservation of said separate estate. As to the statute of limitations, see Griffing *v.* Mills, 40 Miss., 611 ; Fisher *v.* Fisher, 43 id., 212 ; Code, 1871, § 2157. The court erred in the instruction with reference to the existence of a state of war. 1. That it was not illegal for defendant to borrow money from plaintiff within the federal lines to purchase necessary supplies for her starving slaves within the confederate lines. 2. If illegal, the illegality ceased with the close of the war, and inasmuch as defendant had derived a profit from the transaction, she could not now refuse to pay the money. These instructions were refused and others given at the instance of the defendant, announcing an opposite doctrine. Counsel relies on Taber *v.* Armstrong, 12 Wall. They grow out of the trite maxim, *ex turpi nulla actio oritur.* The true doctrine is announced in Gilliam

*v.* Brown, 43 Miss., 642 ; Walker *v.* Jeffries, 45 id., 161. The contract was not void because made in Tennessee. It is a Mississippi transaction. Code, 1857, p. 336, art. 25 ; Pendleton *v.* Galbreath, 45 Miss., 43 ; Partee *v.* Silliman, 44 id., 273 ; Bowman *v.* Helm, Op. Book 1, p. 523 ; Viser *v.* Scruggs, 49 Miss., 709. The doctrine goes still further. See Dalton *v.* Murphy, 30 Miss., 65 ; Mahorner *v.* Hooe, 9 S. & M., 247 ; Bank of Louisiana *v.* Williams, 46 Miss., 618 ; Code, 1857, p. 335 ; 2 Read, 63 ; 6 Sim., 524 ; 1 Coll., 400 ; 5 Paige, 385 ; 4 Sandf. Ch., 351 ; 42 Mo., 45 ; 10 Gratt., 336 ; 10 Ala., 702 ; 4 Leigh, 550 ; Carter *v.* Eveleigh, 4 Dessaus. Eq., 19 ; id., 591 ; 7 Paige, 112 ; 20 Wend., 570 ; 1 Sandf., 17 ; Curtis *v.* Engel, 2 Sandf. Ch., 287 ; Hunt *v.* McClanahau, 1 Heisk. (Tenn.), 509 ; Shacklett *v.* Polk, 4 Heisk., 110.

*C. W. Adams and L. V. Dixon,* for defendant in error :

By moving for a new trial, a party abandons previous exceptions, unless he incorporates them in the motion. Sawyers *v.* Lathrap, 9 Ark., 67 ; Berry *v.* Singer, 10 id., 483 ; Hopkins *v.* Dowd, 11 id., 627 ; Ford *v.* Clark, 12 id., 99 ; Nevill *v.* Hancock, 15 id., 511 ; Kirkpatrick *v.* Wolfe, 17 id., 98 ; Daniel *v.* Guy, 19 id., 122 ; Moss *v.* Smith, id., 683 ; Collier *v.* State, 20 id., 36 ; Graham *v.* Roark, 23 id., 19. The joinder of issue by consent was a waiver of the demurrer, and so no question can grow out of it. Willis *v.* Ives, 1 S. & M., 307 ; Gwin *v.* McCarroll, id., 351 ; Ellis *v.* Martin, 2 S. & M., 187. The demurrer reached back through the whole record. Tucker *v.* Hart, 23 Miss., 548 ; Miles *v.* Myers, Walk., 379 ; Wren *v.* Span, 1 How., 115 ; Haynes *v.* Covington, 9 S. & M., 470. When, after a demurrer, a party pleads over, it is a withdrawal of the demurrer. McLaughlin *v.* Hutchins, 3 Ark., 211 ; 2 Wills., 150 ; Le Brit *v.* Pappilon, 4 East, 503 ; Woodward *v.* Robinson, 1 Str., 302. All intercourse was prohibited beyond the national and within the confederate lines. McKee *v.* United States, 8 Wall., 163 ; United States *v.* Grossmayer, 9 id., 72 ; Maddux *v.* United States, id., 184 ; Woods *v.* Wilder, 43 N. Y., 164. This court hold the same doctrine. Durden *v.* Smith, 44 Miss., 553 ; Mims *v.* Armstrong, 42 id., 429 ; Shotwell *v.*

Ellis, id., 439. The statute of this state, regulating the power of married women over their separate estate, only applies to cases where the separate estates were acquired in this state, and they do not enlarge or restore the powers of *feme coverts* over property acquired by them in any other jurisdiction. Andrews *v.* Jones, 32 Miss., 275 ; Coulter *v.* Robertson, 24 id., 338 ; id., 523; Pressly *v.* Simmons, id., 527 ; Doty *v.* Mitchell, 9 S. & M., 435; Francis *v.* Wigzell, 1 Maddock, 258 ; Tyler on Inf. and Cov., 445 ; Hicks *v.* Johnston, 24 Ga., 194; Caldwell *v.* Sawyer, 30 Ala., 283; Choppin *v.* Harmon, 46 Miss., 308 ; Gibson *v.* Walker, 20 N. Y., 481 ; Noyes *v.* Blakeman, 3 Sandf., 531 ; Tif. & Bull. on Trusts and Trustees, 686 ; Campbell *v.* Fields, 1 Cold., 418 ; Woodrum *v.* Kirkpatrick, 2 Swan, 224; Porter *v.* Baldwin, 7 Humph., 176–7 ; Morgan *v.* Elam, 4 Yerg., 446 ; Litton *v.* Baldwin, 8 Humph., 213 ; Kirby *v.* Miller, 3 Cold., 5; Shacklett *v.* Polk, 4 Heisk., 115 ; Pars. on Cont., 582 ; Whart. Conf. of Laws, §§ 410, 426; Story's Conf. of Laws, §§ 266, 267, 272, 278, 279, 282, p. 238, § 136, p. 12, § 353; Partee *v.* Silliman, 44 Miss., 281 ; Pars. on Bills and Notes, 317–320 ; Story on Prom. Notes, § 49 ; Story on Bills of Ex., §§ 129–131. Where a contract is to be performed in the same state in which it is made, the law of that state governs. Brown *v.* Freeland, 34 Miss., 181 ; Carroll *v.* Renich, 7 S. & M., 798. Matters once determined by a court of full and competent power and jurisdiction of the subject matter and of the parties, is conclusive. 2 Kent, 120; Cooley on Const. Lim., 47; Whart. Conf. of Laws, § 793 ; Story's Conf. of Laws, §§ 604, 609 ; Mills *v.* Duryee, 7 Cranch, 481 ; Hampton *v.* M'Connell, 3 Wheat., 234 ; Durant *v.* Essex Company, 7 Wall., 109. See also Christmas *v.* Russel, 5 Wall., 290 ; Cooper *v.* Reynolds, 10 Wall., 316 ; Kempe's Lessee *v.* Kennedy, 5 Cranch, 173 ; Voorhees *v.* Bank of United States, 10 Pet., 449 ; Thompson *v.* Tolmie, 2 id., 157; Grignon *v.* Astor, 2 How., 319 ; Harvey *v.* Tyler, 2 Wall., 341 ; Stevenson *v.* McLean, 5 Humph., 334 ; Lee *v.* Crossna, 6 id., 282; Miller *v.* United States, 11 Wall., 268; Ludlow *v.* Ramsey, id., 581 ; Miller *v.* Ewing, 8 S. & M., 431. The statute of limitations begins to run from the day on which

the plaintiff might have commenced an action for the recovery of his debt. Johnson v. Pyles, 11 S. & M., 193; Abbott v. McElroy, 10 id., 100; Stevenson v. McReary, 12 id., 9; Lamkin v. Nye, 43 Miss., 241; Fisher v. Fisher, id., 212; Code, 1871, § 2157; 12 Wall., 345.

SIMRALL, J., delivered the opinion of the court.

This was a suit at law, brought by Shacklett against Rebecca Polk, founded upon her promissory note for $10,000, purporting to be for money loaned, dated Columbia, Tennessee, 17th September, 1864, and due twelve months after date.

Several questions are made upon the pleadings, which are intricate and prolix. The case is brought for review to this court, from the decision of the lower court, denying the motion for a new trial. The grounds of that motion present the points of chief contestation on the trial. We have limited our investigation and discussion to those questions.

On the 16th of September, 1864, Mrs. Rebecca Polk constituted the plaintiff, Shacklett, her agent "to take charge of her cotton crop of that year on her plantation in Tunica county in this state, cause the same to be ginned, baled and shipped, and to sell the same at whatever place or places may, from time to time, be designated by the government of the United States, or any department or officer thereof, and to obtain from any duly authorized agent of the government of the United States, all permits, clearances and other papers that may be necessary."

On the 17th of the same month, an additional and supplemental agreement was made, referring to the former, and containing further stipulations, to the effect, that Shacklett should supply provisions and clothing for the hands, bagging and rope for baling the cotton, and pay the expenses incident to shipping it. For compensation, he was to receive ten per cent. of the net proceeds, and be reimbursed traveling expenses whilst engaged about the business. On the same day, Mrs. Polk executed her note, with George W. Polk as surety, to Shacklett for $10,000,

due twelve months after date. But a small part of that sum was actually received in money and used by Mrs. Polk. It was intended to cover and secure such advances and expenditures as should be made by Shacklett under the agreement. What precise outlays were made by him under his agency is not important to be considered, but it may be observed, that a large sum was expended, approximating $10,000.

These contracts, including the note, were dated and actually executed in Tennessee, at or near Columbia, in Maury county, where both parties, Shacklett and Mrs. Polk, resided.

Shacklett, accompanied by Mrs. Polk, immediately repaired to her plantation in Tunica county. It appears that he purchased in Memphis provisions and clothing for the negroes as well as other necessaries. Eighty-five bales of cotton were gathered, which were shipped first to Memphis, thence to New York, and finally to Liverpool, and there sold.

In New York a partial settlement was had, embracing personal expenses for traveling, etc., and ten per cent. commissions on the estimated value of the cotton in New York; and the sum found due was paid by Mrs. Polk to Shacklett. That accounting did not embrace the large items of expenditure for food and clothing for the negroes, repairs of gin house and machinery and those incidental to gathering the cotton and preparing it and shipping it to market.

Mrs. Polk sailed from New York with her family for Europe, and remained abroad for more than a year. During her absence, and shortly after the maturity of the note, Shacklett brought a suit by attachment in chancery against Mrs. Polk, and sought to procure payment of the note out of the separate estate and property of Mrs. Polk in Maury county, Tennessee. She rested her defense in answers to an original, and an amended and supplemental bill, upon the ground, that she was covert, the wife of Andrew J. Polk, and incapable at law of making the contract, and that she did not agree or intend to charge the account on her separate estate. The complainant's bill disclosed that she owned

a large landed property with personal effects thereon in Maury county, Tennessee, and in Tunica county, Mississippi. The respective deeds under which she held these properties were set out. The chancery court, by its final decree, discharged the attachment, and dismissed the bill. In the body of the decree is the declaration, that the note is null and void, and not binding on Mrs. Polk's estate in Tennessee and in Mississippi. But immediately following this declaration, is the statement, that the dismissal is without prejudice to the rights of Shacklett, against the Mississippi property.

On appeal to the supreme court of Tennessee, the decree was affirmed. That judgment also declares, that the note is void, and not binding on the property in Tennessee or in this state.

Two other facts complete the statement of the case. One is, that the late civil war was flagrant at the date of the contracts and note. The other is, that the state of Tennessee was in the complete control and occupancy of the United States forces, and that Tunica county, in this state, was within the confederate millitary occupation.

Shacklett sued Mrs. Polk on the promissory note for $10,000, in the Tunica circuit court. The foregoing facts (with some others) were brought out on the trial. The question is, whether any or all of them, ought to preclude the plaintiff from a recovery.

The assignment of errors challenges the correctness of the decisions of the circuit court on the pleadings, on the instructions to the jury, and the refusal to set aside the verdict and grant a new trial.

There is no serious conflict or controversy touching the material facts. It may be, therefore, more satisfactory to consider, whether the verdict and judgment are correct in the theory of law, laid down to the jury, as applicable to them.

The discussion divides itself into several propositions.

1. Shall the responsibility of Mrs. Polk, on the contracts and note, be determined by the law of Tennessee or of Mississippi?

2. How are these contracts affected by the civil war then in progress?

3. What is the effect of the decree of the chancery court,"and the judgment of the supreme court of Tennessee on the appellant's rights in this suit?

1. The general rule is undoubtedly as claimed by the appellee; that the law of the place where the contract is made furnishes the rule, both for validity or invalidity, as well as for its construction. But the rule is not inflexible or of universal application. The exception is as well established, both in authority and reason, as the rule itself. If performance is to be made, in another jurisdiction, the parties may justly be presumed as referring to its law as the standard, both of validity and construction.

The statute in reference to the separate property of married women, and the extent of their dominion over it, Rev. Code, 1857, arts. 23, 24, 25, 26, 27, has relation to such property in this state, and not to the place of the domicile or residence of the *feme covert*. This is especially so, as to the real estate employed in agriculture. If a married woman acquires real estate in Mississippi, and the instrument which assigns to her, or creates the estate, does not define by limitation or restriction her power over it, she holds, as it were, under the statute, with such rights and modes of disposition and charging, or binding it for debt, as it defines.

The statute, so far as it goes, emancipates from marital control, and confers legal capacity. In so far as she is enabled to assume obligations, they are legal in their character, and may be satisfied out of her property.

If a married woman, the owner of a plantation in this state, should remove with her family to Tennessee to educate her children, or from any other reason, it would hardly be doubted that any liability incurred by her in that state for the improvement of her property, or for an agent to manage it, etc., would be enforced here against the property, whatever might be the law of Tennessee as respects such contracts. Under our statute the inquiry is:

First. Has the married woman separate property? Second. Is the liability, preferred against her, of the class that she is authorized by the statute to incur? If these inquiries are answered in the affirmative, then her creditor may claim that his demand shall be satisfied out of her property. Our statute does not require that it shall be ascertained whether it was the understanding, or agreement with her creditor that her property should respond, as does the law of Tennessee, as resolved by its supreme court on the appeal between these parties (Shacklett v. Polk, 4 Heisk., 104). In that case Mrs. Polk was relieved from the debt because it was not shown that she expressly agreed to charge her property with it; nor did the circumstances conclusively show that such was the purpose of the parties.

In whatever place or jurisdiction Mrs. Polk might be, and however its laws might differ from ours, our courts would hold valid all contracts for the support and maintenance of her slaves or laborers on her lands in this state, for its repair or improvements, for the gathering, ginning, baling, and material therefor of the cotton for transportation to a market, because she is empowered to make liable the property by the statute of this state. Bank of Louisiana v. Williams, 46 Miss., 630; Choppin v. Harmon, id., 306. All the things contracted about between the parties had reference to the Tunica county property. The result was beneficial to Mrs. Polk. We are of opinion, therefore, that notwithstanding the contract may not have imposed a charge upon Mrs. Polk's property in Tennessee, that Shacklett has a right, on the doctrine of the cases of Viser v. Scruggs, 49 Miss., 709, and Dibrell v. Carlisle, 48 id., 706, to be reimbursed so much of the $10,000 sued for as was expended under the contracts of September 16 and 17, 1864, and that the property in Tunica county is liable for its payment. This doctrine is asserted in Partee v. Silliman, 44 Miss., 272, and 46 Miss., 630, and id., 306, *supra*. This is so, unless the note and accompanying agreements were rendered invalid because of the pending war, or because the rights of the parties have been determined and concluded by the judgments of the

courts of Tennessee, or because, under the provisions of the deed under which Mrs. Polk acquired and holds the property in this state, she lacked the power to make the contracts.

Numerous decisions have been made by the supreme court of the United States, the state courts, several by this court, as to the effect of the late war on the relations of the people of the United States, and of the insurgent states. The same disabilities which are superinduced by foreign war were imposed. These had no reference to the opinions, sentiments or acts of the parties implicated. The war was territorial, and *ipso facto*, impressed a hostile character upon the people and property within the insurgent states. Intercourse, commerce, and business between the people inhabiting the insurgent territory and the people of other parts of the United States became at once illegal. The Prize Cases, 2 Black, 635; Alexander's Cotton, 2 Wall., 404; The Bagaley, 5 id., 377; Hanger v. Abbott, 6 id., 532; Statham v. N. Y. Life Ins. Co.. 45 Miss., 593, and cases cited. The act of congress of July 13, 1861, declared all intercourse and commerce unlawful between the inhabitants of such states, or parts of states as should, by the proclamation of the president, be declared to be in insurrection, and the people of other parts of the United States, and all goods and merchandise carried across the interdicted line, subject to forfeiture. The interdict of this statute applied to such insurgent territory as was from time to time permanently occupied by the United States army, as it did to other parts of the United States. To show the rigor of the principle of strict nonintercourse, and for its application in various circumstances, we refer to Hoare v. Allen, 2 Dall., 102; Brown v. Hiatts, 15 Wall., 185; Potts v. Bell, 8 Term, 548; Antoine v. Morshead, 6 Taunt., 237; The Rapid, 8 Cranch, 155; Coppell v. Hall, 7 Wall., 544; United States v. Grossmayer, 9 id., 74. The act of congress referred to is declaratory of the public law, and would stamp with condemnation the act of a resident of Tennessee, within the federal military occupation, coming to this state, within confederate lines, for the purpose of removing cotton for sale to New York or any other market in the

United States. That involves intercourse and commerce between the belligerent countries. It would only be legitimate under "license," as provided in the act.

The circuit court, at the instance of the defendant, instructed the jury that such acts were illegal, and the plaintiff could not recover. The jury were not invited to consider the evidence in respect of a license. Indeed, that feature of the case seems to have been overlooked altogether on the trial.

We are satisfied that the parties did not, by the agreements of the 16th and 17th of September, 1864, intend to do anything illegal. The object designed to be accomplished was to gather the cotton and transport it to a market in the United States, or abroad. The supplies, material and money to be furnished by Shacklett, were means to be used for that end. The parties were cognizant that the act of congress, as construed, forbids the removal of commodities from Mississippi to Memphis and New York, and hence, Shacklett agreed with Mrs. Polk to procure the necessary license and permits. In the statement of agreed facts is the following: "It is agreed the records from the courts of Tennessee, in the case of Abner Shacklett v. Mrs. Rebecca Polk and her husband, are received as full proof of the contents thereof in this case."

Mrs. Polk, in her answer to the amended and supplemental bill of Shacklett, in the chancery court in Tennessee, makes it a mat- of complaint against Shacklett, that he did not fulfill his contract; in this, that he could not and did not procure the necessary permits and licenses, but that she was put to the trouble of getting them. These permits were effectual to protect the parties in all that was contemplated to be done. It was in proof that food and clothing for the negroes, material for the repair of the gin house, and machinery, tagging and rope, were from time to time purchased by Shacklett, at Memphis, and brought by boats to the plantation. Neither party set out to commit a fraud upon the government, or to evade the act of congress. The frequent transportation of goods to the plantation, and the shipment of the 85

bales of cotton to Memphis, and thence to New York, clearly in-
dicated that all these things were done with the consent of the
proper authority, manifested by the permits. The ultimate object
was to save the cotton crop, and send it to market. To do that,
the laborers must be kept in food and clothes, and the plantation,
machinery and implements in working order. These are inci-
dents to the principal object — required money which Shacklett
advanced. We conclude, therefore, that the permits and license
freed the transaction from the condemnation and illegality which
would otherwise have attached to it.

What effect has the decree of the chancery and the judgment
of the supreme court of Tennessee upon the rights of the parties
in this litigation ?

In that suit, Shacklett attempted to procure satisfaction of his
debt out of the separate property of Mrs. Polk, in Maury county,
Tenn. Her land was seized by attachment, and the rents due
from her tenants were garnisheed. Mrs. Polk placed her defense
upon two grounds: First, that she was *covert*, the wife of An-
drew J. Polk, and was incapable in law of making the contract.
Second, that in equity, her separate property was not liable, be-
cause she did not consent and agree that the debt should be
charged upon it. Both defenses were sustained. The proceed-
ing was specific, in the nature of an "*in rem*" process. The
decree in effect was, that inasmuch as Mrs. Polk had denied in
her answer that she consented or agreed to charge the debt upon
her property, and Shacklett had not proved that she had, there-
fore the attachment should be dissolved and the bill dismissed.
The chancellor expresses the opinion that the note is void, and
not binding either upon the property in Tennessee or Mississippi.
But that declaration is immediately followed with the qualifica-
tion that the dismissal shall be without prejudice to any claim
Shacklett may have upon the property in Mississippi.

The supreme court affirmed the decree, but express a concur-
rence in the view taken by the chancellor as to the voidness of
the note. No part of the decree, however, is vacated. The whole

of it was allowed to stand — as well the reservation of Shacklett's claims against the property in this state, as the dissolution of the injunction.

That the supreme court meant this and no more, is made manifest by a careful study of its opinion reported in 4 Heiskell, 105 to 116. After stating that at the common law the contract is absolutely void, the court institutes an inquiry into the right of a *feme covert* to charge her estate in equity. The doctrine is traced through the English decisions, and those of some of the states, and is declared to be uncertain as to the extent of the power. But in Tennessee, there is said to be "no conflict of authority." "The wife cannot bind her separate estate for the satisfaction of any general debt. Without a proof of an express agreement to create such a charge, it cannot be made liable by implication." The cases in 8 Humph., 209; 10 id., 555; 1 Cold., 358; 4 id., 370, are referred to. The following is the concluding sentence of the court: "We find, in this case, no evidence, either positive or circumstantial, that the respondent contracted this loan of $10,000 with reference to the liability of her property in Tennessee for its satisfaction." "The decree of the chancellor is therefore affirmed."

We are brought therefore to the conclusion that these judicial proceedings conclude the plaintiff, thus far; that his debt is not binding in equity on Mrs. Polk's property in Tennessee. But they do not preclude or estop him, in view of the circumstances surrounding his debt, from pursuing it against her property in this state.

The theory of law upon which the case was submitted to the jury, as embraced in the instructions granted, was, that although Mrs. Polk might have a separate estate in the property upon which our statutes were operative as prescribing her power of making it liable for debts, yet the plaintiffs could in no event recover. These instructions are not in harmony with the views hereinbefore expressed, and must necessarily have produced a verdict for the defendant. The first instruction declares, in effect,

that if Shacklett and Mrs. Polk were residents of Tennessee, and the note was made in that state, Mrs. Polk being covert, the jury must find for the defendant. This charge rests upon the predicate that this is a Tennessee contract, and not being rated there by reason of the coverture, under no circumstances could it be enforced against her property here. We have seen that that is erroneous.

The second instruction is, in substance, that if the consideration of the note was for a loan of money, a recovery cannot be had. That is true as a general rule. Nevertheless, if it is shown that the · money was actually used for any of the purposes for which a married woman may incur debt, or bind her property, a recovery could be had.

The third instruction is to the effect that if either money or goods were to be transported beyond the federal lines into and within the Confederate States government, for the benefit of Mrs. Polk's plantation, and to supply the wants of her slaves, then such contract is void in law, and the jury will find for the defendant. The court ought to have added the qualification, unless done with license of the government or its competent officer. In this connection, we refer to what we have before said upon this subject.

The only grounds assigned for a new trial are, the refusal to give the instructions asked by the plaintiff, and granting those asked by the defendant.

A very interesting and important question arises upon the deed conveying the Tunica county property to trustees, in trust for Mrs. Polk, and that is, whether, by the terms of the trusts declared, Mrs. Polk is not restrained from subjecting and making liable the property for her debts for any purpose whatever.

The words are, " during said term, to have, possess, use and enjoy the same, and by herself, or by an agent appointed by any writing under her hand, to manage the same, appropriate the rents, issues and profits thereof in any way she may think proper, except in the way of anticipation thereof."

If Mrs. Polk is restrained and limited in her power over the estate by the grantor, so as to deny her the right to bind it in any mode for debt, the instrument would define the measure of her right, and not the statute. As to the effect of this deed, we express no opinion.

For the errors hereinbefore indicated, the judgment is reversed, and a *venire facias de novo* awarded.